IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| COSTAR GROUP, INC., COSTAR REALTY INFORMATION, INC., and LOOPNET, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>XCELIGENT, INC.,<br><br>Defendant. | Case No. 4:16-cv-01288-FJG |

## SUGGESTIONS IN SUPPORT OF
## DEFENDANT XCELIGENT, INC.'S MOTION TO DISMISS

Robert A. Henderson
John Tyner
Amy D. Fitts
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
Fax: (816) 753-1536
rhenderson@polsinelli.com

Brian H. Polovoy
John Gueli
Thomas R. Makin
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
Fax: (212) 848-7179
bpolovoy@shearman.com

*Counsel for Defendant Xceligent, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................... iii

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS .............................................................................................3

    A. Overview...............................................................................................................3

    B. The FTC Order.....................................................................................................5

    C. The Complaint .....................................................................................................6

III. LEGAL STANDARD.....................................................................................................7

IV. ARGUMENT..................................................................................................................8

    A. All of Plaintiffs' Claims Should Be Dismissed Because They Are Barred by the FTC Order .................................................................................................8

    B. Plaintiffs' CFAA Claim Should Be Dismissed for Failure to Plead a Cognizable "Loss" ...............................................................................................10

    C. Plaintiffs' DMCA Claim Should Be Dismissed for Failure to Identify Cognizable Copyright Management Information ...................................................11

V. CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                         **Page(s)**

*Allen-Myland, Inc. v. IBM*,
   746 F. Supp. 520 (E.D. Pa. 1990) ...................................................................................................9

*Am. Fam. Mut. Ins. Co. v. Rickman*,
   554 F. Supp. 2d 766 (N.D. Ohio 2008) ..........................................................................................11

*Am. Securit Co. v. Shatterproof Glass Corp.*,
   268 F.2d 769 (3d Cir. 1959) ............................................................................................................9

*Andritz, Inc. v. S. Maint. Contractor, LLC*,
   626 F. Supp. 2d 1264 (M.D. Ga. 2009) .........................................................................................11

*Atl. Recording Corp. v. Raleigh*,
   2009 WL 1543458 (E.D. Mo. June 2, 2009) .................................................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................................7

*Cable v. Agence France Presse*,
   728 F. Supp. 2d 977 (N.D. Ill. 2010) .............................................................................................13

*Cenvo Corp. v. Celumsolutions Software GMBH & Co. KG*,
   504 F. Supp. 2d 574 (D. Minn. 2007) ............................................................................................11

*Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*,
   387 F. Supp. 2d 378 (S.D.N.Y. 2005) ............................................................................................11

*CoStar Realty Info., Inc. v. Field*,
   737 F. Supp. 2d 496 (D. Md. 2010) ...............................................................................................10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) .........................................................................................................................13

*Dewitt Ins., Inc. v. Horton*,
   2014 WL 2208073 (E.D. Mo. May 28, 2014) ...............................................................................10

*Eckert v. Titan Tire Corp.*,
   514 F.3d 801 (8th Cir. 2008) ...........................................................................................................8

*Goldstein v. MRIS*,
   2016 WL 4257457 (D. Md. Aug. 11, 2016) .................................................................................13

*Harley Auto. Grp., Inc. v. AP Supply, Inc.*,
   2013 WL 6801221 (D. Minn. Dec. 23, 2013) ...............................................................................10

*IQ Grp. v. Wiesner Publ'g*,
  409 F. Supp. 2d 587 (D.N.J. 2006) ...............................................................................13

*Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*,
  2009 WL 963130 (M.D. Fla. Apr. 8, 2009) .................................................................10

*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295 (3d Cir. 2011)..........................................................................................13

*ReMedPar, Inc. v. AllParts Med., LLC*,
  683 F. Supp. 2d 605 (M.D. Tenn. 2010).......................................................................11

*Tempo Music v. Myers*,
  407 F.2d 503 (4th Cir. 1969) ..........................................................................................9

**Statutes**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(c) ...........................................11

Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(11)...............................................10

Copyright Act, 17 U.S.C. § 401........................................................................................12

Digital Millennium Copyright Act, 17 U.S.C. § 512(c) .....................................................7

Digital Millennium Copyright Act, 17 U.S.C. § 1202(a) .................................................12

Digital Millennium Copyright Act, 17 U.S.C. § 1202(b) .................................................12

Digital Millennium Copyright Act, 17 U.S.C. § 1202(c)(3).............................................12

**Rules**

Fed. R. Civ. P. 12................................................................................................................1

**Other Authority**

Federal Trade Commission, Decision and Order,
  *In the Matter of CoStar Grp., Inc., et al.*, Dkt. No. C-4368,
  2012 WL 3862130 (Aug. 29, 2012) ....................................................................... *passim*

Defendant Xceligent, Inc. respectfully submits, pursuant to Fed. R. Civ. P. 12(b)(6), these Suggestions in support of its motion to dismiss the Complaint of Plaintiffs CoStar Group, Inc. and its subsidiaries CoStar Realty Information, Inc. ("CoStar") and LoopNet, Inc. ("LoopNet").

## I. INTRODUCTION

The parties are competitive providers of commercial real estate ("CRE") listing databases and information services. Plaintiffs are "famously litigious" and known throughout the industry for "using [their] heft to stifle" and "bully[]" the competition, and for employing litigation to "intimidate" and "scare" competitors.[1] The timing of this particular lawsuit is no coincidence. The Complaint — along with Plaintiffs' press release and launch of a website broadcasting the lawsuit, common tactics in their intimidation-through-litigation strategy[2] — comes on the eve of Xceligent's long-planned and highly-publicized expansion into the New York City CRE market, the nation's largest, where Plaintiffs have historically been the dominant provider of CRE listing and information services.

Plaintiffs purport to complain that property photos and other listing data from their databases are also present on Xceligent's databases. Tellingly, the Complaint uses "CoStar" to refer to both CoStar and LoopNet without differentiation, and makes liberal use of the expansive phrase "CoStar databases." This is not careless drafting. It is a purposeful effort to obscure what is at issue and in dispute in this action. CoStar and LoopNet offer distinct products and services

---

[1] Ex. A, *CoStar's Crusade*, The Real Deal, August 2016 (noting that "[s]ince 2004, CoStar has filed at least 31 federal lawsuits against users and competitors, court records show."). Xceligent has filed concurrently herewith a request for judicial notice of Exhibits A-J cited in these Suggestions.

[2] *See* Ex. B (www.costar.com/xceligent); *see also, e.g.*, Ex. C, *CoStar Files Copyright Infringement Lawsuit Against RealMassive*, COSTAR GROUP, May 22, 2015 ("For more information about this case, please visit www.realmassivecase.com."); Ex. D, *CoStar Group Files Multi Stage Lawsuits with Multiple Defendants Alleging Thousands of Instances of Copyright Infringement*, COSTAR GROUP, Apr. 1, 2014.

targeted to different customers, and each has different databases that are populated by different sources. CoStar's database is available only to those who pay a subscription fee, whereas LoopNet's database is freely accessible to the general public and is populated with photos and data provided by real estate brokers seeking to publicize their offerings. Crucially — and, we submit, fatal to Plaintiffs' claims — Plaintiffs' allegations about so-called unauthorized and improper access of the "CoStar databases" concern the publicly-accessible LoopNet database and the CRE brokers' *own listing information* that the brokers make publicly available. (In fact, CoStar's subscription database is password-protected and accessible only by subscribers who have a continuously-updated password-generating "key," and the Complaint does not and could not allege that Xceligent is a subscriber or has such a key.)

The common-sense proof that Plaintiffs' complaints are pretextual and that this lawsuit is instead driven by anticompetitive fervor lies in the fact that for five years Plaintiffs have never exercised their right — stemming from a Federal Trade Commission order regarding CoStar Group's acquisition of LoopNet and requiring LoopNet's divestiture of Xceligent (the "FTC Order") — to have Xceligent's systems audited to search for and remove allegedly "stolen" photos or data. Nor have Plaintiffs ever issued copyright "takedown notices" requesting the removal of allegedly infringing material.

Not surprisingly, commercial property brokers typically publicize their offerings by providing photos and listing data to *both* Plaintiffs *and* Xceligent. Even Plaintiffs concede that a broker who posts its photos and data to LoopNet does not thereby relinquish the right to share its photos and data with Xceligent. And the FTC Order, which binds Plaintiffs, specifically (i) is intended to enable Xceligent to expand and increase its effectiveness as a competitor to CoStar and LoopNet, (ii) forbids Plaintiffs from "[d]irectly or indirectly" prohibiting or restricting

2

brokers from providing their listing information or data to Xceligent, and (iii) prohibits Plaintiffs from pursuing litigation seeking relief inconsistent with the terms or purposes of the FTC Order. For this reason alone, the Complaint should be dismissed in its entirety.

Independent of the FTC Order, Plaintiffs fail to state a claim for relief on two of the four causes of action asserted. The claim under the Computer Fraud and Abuse Act ("CFAA") fails because the Complaint contains only a formulaic recitation of the elements of a cause of action and fails to allege a cognizable "loss" — *i.e.*, one based on "interruption of service" or "actual computer impairment." The claim under the Digital Millennium Copyright Act ("DMCA") fails because Plaintiffs do not allege that Xceligent removed, altered, and/or replaced "copyright management information" as defined in the statute.

## II.     STATEMENT OF FACTS

### A.     Overview

1. LoopNet and Xceligent each maintain listing databases that allow parties to publicize and to search for commercial real estate properties for sale or lease. The Xceligent marketing platform that competes with LoopNet's marketing platform is "CommercialSearch." Both the LoopNet and the CommercialSearch databases are accessible by the general public free-of-charge (although LoopNet also offers "Premium Lister" and "Premium Searcher" services that enable users who pay a fee to have their listings viewable by more users or to themselves be able to view a greater number of listings). (*See* Compl. ¶¶ 12, 24, 35, 44, 79; *id.* Ex. A at 2-3.) Both the LoopNet and the CommercialSearch databases provide similar high-level listing information, such as the property address and sale price or rental rate, along with one or more property photos for each listing. (Broadly speaking, the LoopNet site (LoopNet.com) and the CommercialSearch site (commercialsearch.com) serve the CRE market much as websites like Zillow serve the residential real estate market.)

3

2. The LoopNet database contains listing content — including photos — originated, provided, and loaded onto that site by CRE brokers (*e.g.*, Cushman & Wakefield, CBRE), who generally update their listings on a monthly basis. (*See* Compl. ¶ 10; *id.* Ex. A at 3.) As even LoopNet's own Terms of Service make clear, photos and content uploaded by a broker to the LoopNet site remain the property of the broker, even if a CoStar watermark is added to the photos. (*See id.* Ex. A at 3-4.)

3. CoStar and Xceligent each maintain databases that contain much more comprehensive property information than is available on the LoopNet or CommercialSearch sites, such as sale and lease comparables, tenant data, historical transactions, and historical occupancy rates. CoStar's subscription database is known as "CoStar Property," and Xceligent's competing subscription database is known as "CDX." Both the CoStar Property and the CDX databases are proactively updated by teams of researchers who gather relevant data from various sources, such as calls with tenants, owners and listing agents, reviews of property records, and in-person or virtual site inspections. These databases are available only to users who pay monthly subscription fees, and are used by CRE-industry professionals such as appraisers, brokers, and property developers and owners to enable them to evaluate potential transactions and compare similar properties. (*See id.* ¶¶ 6-10, 24, 29, 31-34.)

4. Finally, the parties also offer competing software products to brokerages to power the brokerages' websites. If a brokerage uses such software, the listings displayed and viewable by the public on the brokerage's website link to and are maintained on CoStar's, LoopNet's, or Xceligent's servers, as the case may be. (*See id.* ¶¶ 31, 50.) Plaintiffs' "CoStar Connect" software product links to the brokerage's listings on the CoStar Property database, and CoStar's Terms of Service make clear that the listing information and photos provided by the

4

brokerage and viewable by the public via CoStar Connect remain the property of the brokerage. (*See id.* ¶¶ 49-50; *id.* Ex. B at 9.) Plaintiffs' "LoopLink" software product links to the brokerage's listings on the LoopNet database. Thus, in the case of a brokerage that uses LoopLink, the brokerage's website links to and displays data and photos provided by the brokerage itself (to the LoopNet database).

### B. The FTC Order

5. Plaintiff CoStar Group (the parent of CoStar and LoopNet) purchased LoopNet in April 2012. At the time, LoopNet held a significant ownership interest in Xceligent. The FTC determined that CoStar Group's proposed acquisition of LoopNet would be anticompetitive. Specifically, the FTC's Complaint against CoStar Group explained that CoStar was the nation's largest provider of proactively researched CRE information services, and that LoopNet, in part aided by its relationship with Xceligent, had "converged into CoStar's historic area of dominance." (Ex. E, FTC Compl., *In the Matter of CoStar Grp., Inc., et al.*, Dkt. No. C-4368 (Aug. 29, 2012), ¶ 3.) The FTC therefore approved the transaction on condition that the combined firm divest LoopNet's interest in Xceligent. (*See* Compl. ¶ 35, n.1; Ex. F, FTC Decision and Order, *In the Matter of CoStar Grp., Inc., et al.*, Dkt. No. C-4368, 2012 WL 3862130 (Aug. 29, 2012) (the "FTC Order"), § II.A.)

6. The FTC Order requiring the combined CoStar-LoopNet to divest Xceligent imposed on Plaintiffs what the FTC described as "conduct relief that is unusual in a merger settlement," and was specifically intended to foster Xceligent's expansion. (*See* Ex. G, FTC Press Release dated Apr. 26, 2012, FTC Places Conditions on CoStar's $860 Million Acquisition of LoopNet ("FTC Press Release").) As the FTC explained, the FTC Order "requires the combined CoStar-LoopNet to take certain steps that will ensure that Xceligent is able to continue to compete and expand aggressively," and "is designed so that [Xceligent] will be able to rapidly

grow … into a more complete, national listings database and information services alternative to the merged CoStar-LoopNet." (*Id.*)

7. To that end, the FTC Order recites that the required Xceligent divestiture was intended "to preserve Xceligent as an independent, viable, and effective competitor …, to facilitate Xceligent's expansion of its product line and its geographic coverage, and to remedy the lessening of competition resulting from" the LoopNet acquisition. (FTC Order [Ex. F] § II.G.)

8. The FTC Order thus prohibits CoStar and LoopNet from "inviting, entering into, implementing, continuing, enforcing, or attempting or threatening thereto, any existing or future oral or written condition, requirement, policy, agreement, contract or understanding … with any Customer that … [d]irectly or indirectly prohibits or restricts a Customer from providing … Xceligent … CRE Listings or CRE Information … obtained or derived by the Customer from a source other than a *CoStar* Database." (*Id.* § III.A.1, emphasis added.) The FTC Order makes clear that, although "CoStar Database" includes the CoStar Property database, it specifically *excludes* the broker-sourced non-subscription LoopNet database. (*See id.* §§ I.N, I.R.)

9. The FTC Order also requires that Plaintiffs "shall not seek, directly or indirectly … in any judicial action, a decision the result of which would be inconsistent with the terms or achieving the purposes of this Order." (*Id.* § III.K.)

C. **The Complaint**

10. Plaintiffs' CFAA claim is premised on the allegation that Xceligent has circumvented Plaintiffs' technological security measures to gain unauthorized access to LoopNet's servers, and has obtained and used CoStar-copyrighted photos and proprietary information stored thereon. (Compl. ¶¶ 53-55, 145-49.) Plaintiffs assert that, as a result, they

"ha[ve] suffered over $5,000 worth of damages and losses … including without limitation costs incurred assessing and responding to the unauthorized access and illegal activity." (*Id.* ¶ 150.)

11. Plaintiffs' DMCA claim is premised on the assertion that CoStar's trademarked company logo has been placed as a "watermark" on the photos on LoopNet's servers, and that this logo constitutes "copyright management information" under the DMCA. (*Id.* ¶ 153; *see* Ex. H, COSTAR, Registration No. 4916581; Ex. I, COSTAR GROUP, Registration No. 4911993.) Plaintiffs further assert that Xceligent has violated the DMCA by removing, altering, and/or replacing this logo (with an Xceligent CommercialSearch logo) on the photos that Xceligent has allegedly copied from LoopNet's servers. (Compl. ¶¶ 153-56.)

12. The FTC Order gives Plaintiffs the right to have Xceligent's systems audited by an FTC-appointed Monitor for purposes of assessing whether Xceligent may have improperly obtained any CRE listings or information from a "CoStar Database" as defined in the FTC Order (*see* FTC Order [Ex. F] §§ II.B, VI.C.5), but Plaintiffs do not allege that they have ever sought to avail themselves of that right. Similarly, under the DMCA, CoStar (as the alleged owner of the claimed copyrights at issue) has the right to issue a "takedown notice" to Xceligent demanding the removal from the CommercialSearch site of any photos as to which CoStar claims copyright. *See* 17 U.S.C. § 512(c). The Complaint does not allege that CoStar has ever sought to avail itself of this right, either.

### III. LEGAL STANDARD

Although Xceligent disputes Plaintiffs' allegations, the Complaint's well-pleaded facts must be accepted as true solely for purposes of this motion to dismiss. Even so, to avoid dismissal, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires Plaintiffs to allege *facts* sufficient to "raise a right to relief above the speculative level." *Id.* at 555. Mere

"labels and conclusions" are not enough, and a "formulaic recitation of the elements of a cause of action will not do." *Id.*; *see Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

## IV. ARGUMENT

### A. All of Plaintiffs' Claims Should Be Dismissed Because They Are Barred by the FTC Order

Each of Plaintiffs' four causes of action rests on an assertion that certain photos and/or other information found on Plaintiffs' databases are also present on Xceligent's CommercialSearch site. However, as explained above, LoopNet's publicly-accessible marketing platform contains listing information and content *provided by brokers*, and brokerages that use CoStar Connect and LoopLink do so to market *their own listings*. And the Complaint does not plausibly allege facts establishing that any photos or data not provided to Xceligent directly by a broker itself were not obtained at the broker's direction (*e.g.*, "you can get my listings from LoopNet"). In fact, Plaintiffs admit that, to the extent Xceligent updates listings from LoopNet, it does so "*per [Xceligent's] customers' request*." (Compl. ¶ 64, emphasis added.) It is therefore irrelevant that Xceligent researchers contribute photos and data to the CommercialSearch site. (*See id.* ¶ 80.)

Plaintiffs acknowledge that they are subject to and bound by the FTC Order. *See* Compl. ¶ 35, n.1; *see also* Ex. G, FTC Press Release ("When the Commission issues a consent order on a final basis [*i.e.*, the FTC Order], it carries the force of law with respect to future actions."). As noted, the FTC Order specifically provides that Plaintiffs may not "[d]irectly or indirectly" prohibit or restrict brokers from providing their own listings or information to Xceligent (FTC Order [Ex. F] § III.A.1), and prohibits Plaintiffs from suing for relief "which would be inconsistent with the terms or achieving the purposes of" that Order (*id.* § III.K).

Yet, that is precisely what Plaintiffs are attempting with this lawsuit. They concede, as they must, that "brokerages [are] free to provide their own photographs and information" to Xceligent. (Compl. ¶ 49.) They cannot at the same time — especially in the face of the FTC Order commanding otherwise — effectively seek to prohibit brokers from doing so, or to hold Xceligent liable for displaying the brokers' photos and information, merely because the brokers use CoStar Connect to display their listings or because that information may happen to also reside on LoopNet's publicly-accessible database. Indeed, in 2009, before they became corporate affiliates, CoStar answered LoopNet's complaints about CoStar researchers searching LoopNet's site as follows: "we think it's silly that LoopNet makes this listing information available on its public Web site for all of the world to see, and that they're trying to essentially argue that CoStar can't look at it." (Ex. J, *LoopNet, CoStar, Begin A New Round in Long Boxing Match*, June 15, 2009, National Real Estate Investor.)

Simply put, Plaintiffs cannot evade the FTC Order by effectively claiming ownership of brokerages' photos and data simply because the brokerages store their photos and data on Plaintiffs' servers. This Court should therefore dismiss the Complaint in its entirety. *See Tempo Music v. Myers*, 407 F.2d 503, 507 (4th Cir. 1969) (reversing judgment for plaintiff and remanding with instructions to dismiss the complaint, holding as a matter of law that plaintiff was estopped from recovery for copyright infringement due to failure to comply with antitrust consent judgment); *see also Am. Securit Co. v. Shatterproof Glass Corp.*, 268 F.2d 769, 772, 777-78 (3d Cir. 1959) (plaintiff's contractual license provision violated consent decree and thus constituted misuse barring patent infringement action); *Allen-Myland, Inc. v. IBM*, 746 F. Supp. 520, 538-40 (E.D. Pa. 1990) (plaintiff estopped from asserting copyright infringement claim due to its violations of consent decree).

9
Case 4:16-cv-01288-FJG   Document 26   Filed 01/27/17   Page 13 of 19

### B. Plaintiffs' CFAA Claim Should Be Dismissed for Failure to Plead a Cognizable "Loss"

Plaintiffs' CFAA claim should be dismissed because they fail to allege a cognizable "loss" under the statute, *i.e.*, a loss resulting from computer impairment or an interruption of service to their computers. Indeed, at least two federal courts have specifically rejected CoStar's CFAA claims for this very reason. *See Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, 2009 WL 963130, at *4 (M.D. Fla. Apr. 8, 2009) (granting motion to dismiss CFAA counterclaim because "CoStar … failed to allege damage or loss as contemplated by the CFAA."); *see also CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 513 (D. Md. 2010) ("Most courts have found that the CFAA does not recognize lost revenue damages as 'loss' unless it was incurred because of interruption of service.") (internal citation and quotation omitted).

Plaintiffs allege that Xceligent circumvented their technological security measures to gain unauthorized access to LoopNet's computers and servers and that, due to this alleged CFAA violation, they "ha[ve] suffered over $5,000 worth of damages and losses … including without limitation costs incurred assessing and responding to the unauthorized access and illegal activity." (Compl. ¶¶ 145-50.) Under the CFAA, however, an actionable "loss" is limited to "any reasonable cost …, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages *incurred because of interruption of service.*" 18 U.S.C. § 1030(e)(11) (emphasis added).

"[T]he weight of relevant authority restricts the CFAA 'loss' requirement to *actual computer impairment*." *Dewitt Ins., Inc. v. Horton*, 2014 WL 2208073, at *3-4 (E.D. Mo. May 28, 2014) (quoting *Harley Auto. Grp., Inc. v. AP Supply, Inc.*, 2013 WL 6801221, at *6 (D.

10

Minn. Dec. 23, 2013)) (emphasis added) (granting motion to dismiss).[3] Plaintiffs have alleged that Xceligent copied their pictures and data, but have not pleaded that their alleged "loss" was due to "interruption of service" or "actual computer impairment." Plaintiffs' paraphrasing of the statute is not enough to state a claim. *See Atl. Recording Corp. v. Raleigh*, 2009 WL 1543458, at *3 (E.D. Mo. June 2, 2009) ("[D]efendant offers no supporting facts to describe any impairment to her computer's data, programs, system, or information. In sum, defendant's unsupported conclusory allegations contain nothing more than 'a formulaic recitation of the elements' of a claim under 18 U.S.C. § 1030(a)(5)(C). Therefore, defendant's CFAA counterclaim fails to state a claim.…" (citation omitted)). The CFAA claim should be dismissed.

### C. Plaintiffs' DMCA Claim Should Be Dismissed for Failure to Identify Cognizable Copyright Management Information

Plaintiffs' DMCA claim should be dismissed because they fail to plead facts plausibly suggesting that Xceligent has removed, altered, and/or replaced statutorily-defined "copyright management information" ("CMI"). The bare CoStar logos alleged to be CMI do not constitute

---

[3] *See, e.g.*, *Cenvo Corp. v. Celumsolutions Software GMBH & Co. KG*, 504 F. Supp. 2d 574, 580-581 (D. Minn. 2007) (action against former employee for allegedly providing a competitor with confidential computer access failed to state a CFAA claim because there was no allegation that the access caused an interruption in service); *see also ReMedPar, Inc. v. AllParts Med., LLC*, 683 F. Supp. 2d 605, 614-15 (M.D. Tenn. 2010) ("[I]nvestigation of … alleged wrongful acts (*i.e.*, the misappropriation of confidential information), as well as the costs incurred … in … efforts to seek redress for those acts … are likewise not the type of loss that are covered by the statute.… RMP's failure to allege facts reasonably giving rise to an inference that it suffered the type of 'loss' recognized by the CFAA provides an alternative basis for dismissal of the CFAA claims."); *Andritz, Inc. v. S. Maint. Contractor, LLC*, 626 F. Supp. 2d 1264, 1266-67 (M.D. Ga. 2009) ("Plaintiff simply fails to allege that it suffered any damages that fall within CFAA's statutory definition of 'loss' or 'damage.' Plaintiff does not allege that there was any impairment to its computer system or data as a result of Defendants' conduct."); *Am. Fam. Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 772 (N.D. Ohio 2008) ("[T]he statute is limited to the destruction and/or damage of computer information.…") (internal quotation omitted)); *Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) ("[C]osts not related to computer impairment or computer damages are not compensable under the CFAA.…").

CMI for two independent, but complementary, reasons: (1) neither CoStar's nor Xceligent's logos include sufficient information to meet the statute's definition of CMI (17 U.S.C. § 1202(c)), and (2) the expansion of CMI to cover a company's logo, standing by itself, impermissibly blurs the distinction between trademark law and copyright law.

The DMCA prohibits false CMI, or the removal or alteration of CMI. *See* 17 U.S.C. §§ 1202(a) and (b). Plaintiffs assert that CoStar's and Xceligent's logos placed as "watermarks" on the photos on the LoopNet and CommercialSearch servers constitute CMI under the DMCA. (Compl. ¶¶ 153-56.) This is so, according to Plaintiffs, because CoStar's watermark "identifies CoStar as *the copyright owner* of such photographs," and Xceligent's CommercialSearch watermark "indicates to users of CommercialSearch that CommercialSearch is *the copyright owner* of the photographs." (*Id.* ¶ 153, emphasis added.)

However, to constitute CMI under the DMCA, the logo or mark in question must convey "*the information set forth in a notice of copyright*." 17 U.S.C. § 1202(c)(3) (emphasis added).[4] The Copyright Act, in turn, requires that a "notice" include, among other things, "the symbol © …, or the word 'Copyright', or the abbreviation 'Copr.'" 17 U.S.C. § 401. Because Plaintiffs do

---

[4] The DMCA sets forth eight alternative formulations of CMI, but only formulation (3) is potentially implicated here. The eight formulations are: (1) the title and other information identifying the work, including the information set forth on a notice of copyright; (2) the name of, and other identifying information about, the author of a work; (3) the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright; (4) the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work; (5) in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work; (6) terms and conditions for use of the work; (7) identifying numbers or symbols referring to such information or links to such information; and (8) such other information as the Register of Copyrights may prescribe by regulation. *See* 17 U.S.C. § 1202(c). Through combination with formulation (7), the information required by formulation (3) may be set forth symbolically.

not and cannot allege that either party's watermark includes such information, the DMCA claim should be dismissed.[5]

Plaintiffs' DMCA claim should also be dismissed for the independent reason that it ignores the distinction between trademark law and copyright law; it would allow a trademarked company logo, standing by itself, to serve not only as a source-designator, but also to signify copyright management information. *See IQ Grp. v. Wiesner Publ'g*, 409 F. Supp. 2d 587, 592 (D.N.J. 2006) ("In effect, IQ asks this Court to construe the DMCA so as to allow a logo, functioning as a service mark, to come within the definition of copyright management information.… [T]his turns the DMCA into a species of mutant trademark/copyright law, blurring the boundaries between the law of trademarks and that of copyright.… The Supreme Court cautioned against blurring the boundaries between trademark law and copyright law in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).").[6] Indeed, in their Complaint, Plaintiffs describe the alleged replacement of CoStar's logo with Xceligent's in quintessentially trademark terms — *i.e.*, as a "deliberate attempt to 'rebrand' CoStar's images." (Compl. ¶ 87.)

---

[5] While courts have found that (i) the name of *the author* of a work — by itself — can constitute CMI under formulation (2), *see, e.g., Murphy v. Millennium Radio Grp., LLC*, 650 F.3d 295, 300-05 (3d Cir. 2011), and (ii) the name of the copyright owner — *together with a "©"* — can constitute CMI under formulation (3), *see, e.g., Goldstein v. MRIS*, 2016 WL 4257457, at *1 (D. Md. 2016); *Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 978-81 (N.D. Ill. 2010), the plain statutory language with respect to formulation (3) requires more than the name of the copyright owner (or a representative logo), *standing by itself*, to be CMI.

[6] In *Murphy*, the Third Circuit held that there is no requirement that CMI be implemented electronically or automatically. *See* 650 F.3d at 305. It therefore abrogated that portion of the District Court of New Jersey's opinion in *IQ Group* relating to that issue. *See IQ Grp.*, 409 F. Supp. 2d at 597 (or, more generally, Part II.B.2 of the opinion). That issue is not implicated by this motion, and the *Murphy* court did not question Part II.B.1 of the *IQ Group* opinion, which is cited and discussed in the text above.

Because neither CoStar's nor Xceligent's watermark is statutory CMI, and because Plaintiffs' attempt to treat CoStar's trademarked logo as CMI ignores the distinction between trademark law and copyright law, the DMCA claim should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Xceligent respectfully requests that the Complaint be dismissed in its entirety. If it is not dismissed in its entirety, Plaintiffs' third and fourth causes of action nevertheless should be dismissed for failure to state a claim upon which relief can be granted.

Dated: January 27, 2017

Respectfully Submitted,

POLSINELLI PC

*/s/ Robert A. Henderson*
ROBERT A. HENDERSON      #28566
JOHN M. TYNER            #58864
AMY D. FITTS             #61460
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112
(816) 753-1000
Fax:  816-753-1536
rhenderson@polsinelli.com
jtyner@polsinelli.com
afitts@polsinelli.com

Brian H. Polovoy (Pro Hac Vice)
John Gueli (Pro Hac Vice)
Thomas R. Makin (Pro Hac Vice)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
bpolovoy@shearman.com
jgueli@shearman.com
Thomas.makin@shearman.com

ATTORNEYS FOR DEFENDANT
XCELIGENT, INC.

# CERTIFICATE OF SERVICE

       I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court this 27th day of January, 2017, to all the following counsel of record:

Eric M. Anielak
Elizabeth Fessler
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
*Attorneys for Plaintiffs*

Nicholas J. Boyle
C. Bryan Wilson
Matthew H. Blumenstein
Jonah E. Perlin
Williams & Connolly LLP
725 12th Street, N.W.
Washington, DC 20005
*Attorneys for Plaintiffs*

                                      */s/ Robert A. Henderson*_____
                                      ATTORNEY FOR DEFENDANT

04/603662