# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

COSTAR GROUP, INC., COSTAR REALTY
INFORMATION, INC., and LOOPNET, INC.,

        Plaintiffs,

        v.

XCELIGENT, INC.,

        Defendant.

Case No. 4:16-cv-01288-FJG

## SUGGESTIONS IN OPPOSITION TO
## <u>DEFENDANT XCELIGENT, INC.'S MOTION TO DISMISS</u>

Eric M. Anielak - MO Bar # 45653
Elizabeth Fessler - MO Bar # 67169
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
eanielak@shb.com

Nicholas J. Boyle (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
Matthew H. Blumenstein (*pro hac vice*)
Jonah E. Perlin (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
nboyle@wc.com

*Attorneys for Plaintiffs CoStar Group, Inc.,*
*CoStar Realty Information, Inc., and*
*LoopNet, Inc.*

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

III.  LEGAL STANDARD............................................................................................3

IV.  ARGUMENT .........................................................................................................3

    A.  The FTC Order Does Not Bar CoStar's Claims. ......................................3

        1.  Xceligent Cannot Rely on an FTC Order as a Basis to Dismiss the Complaint......................................................................4

        2.  Even if a Non-Party Could Invoke an FTC Order, This FTC Order Expressly Permits CoStar To Protect Its Rights. ........................................7

        3.  Xceligent's Legal Arguments Regarding the FTC Order Fail To Address the Factual Allegations Actually Made in the Complaint.............8

    B.  The Complaint Pleads Sufficient Loss Under the CFAA. ....................................10

    C.  The Complaint Alleges That Infringed CoStar Photographs Contained Copyright Management Information ....................................................................13

V.  CONCLUSION.....................................................................................................15

# **TABLE OF AUTHORITIES**

## **CASES**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009)....................................11

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011) ......................................14

*Allen-Myland, Inc. v. IBM Corp.*, 746 F. Supp. 520 (E.D. Pa. 1990)..............................................6

*Am. Security Co. v. Shatterproof Glass Corp.*, 268 F.2d 769 (3d Cir. 1959) .................................5

*Andritz, Inc. v. S. Maint. Contractor, LLC*, 626 F. Supp. 2d 1264 (M.D. Ga. 2009) ...................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................3, 13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..........................................................................3

*Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750 (D.N.J. 1999) ...............................................................................................................................4, 5

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) .....................................................4

*Brown Jordan Int'l, Inc. v. Carmicle*, No. 16-11350, __ F. 3d __, 2017 WL 359651 (11th Cir. Jan. 25, 2017) .................................................................................11, 12

*Cable v. Agence France Presse*, 728 F. Supp. 2d 977 (N.D. Ill. 2010)....................................14, 15

*Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574 (D. Minn. 2007) .........................................................................................................13

*Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*, 387 F. Supp. 2d 378 (S.D.N.Y. 2005) ...............................................................................................................13

*CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496 (D. Md. 2010)........................................13

*Deckard v. GMC*, 307 F.3d 556 (7th Cir. 2002) ...........................................................................6

*Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150 (KMW), 2016 WL 6135662 (S.D.N.Y. Oct. 19, 2016) .............................................................14, 15

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) ......................................11

*Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. TDC-15-2400, 2016 WL 4257457 (D. Md. Aug. 11, 2016).........................................................................................................14

*Gomez v. Toledo*, 446 U.S. 635 (1980) .........................................................................................6

*H&R Block E. Enters., Inc. v. J&M Sec., LLC*, No. 05-1056-CV-W-DW, 2006
WL 1128744 (W.D. Mo. Apr. 24, 2006) ............................................................12

*Henley v. Brown*, 686 F.3d 634 (8th Cir. 2012).........................................................3

*IQ Group., Ltd. v. Wiesner Publishing, LLC*, 409 F. Supp. 2d 587 (D.N.J. 2006)..................14, 15

*Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, No. 8:08-cv-1227-T-30EAJ,
2009 WL 963130 (M.D. Fla. Apr. 8, 2009) ......................................................13

*May Dep't Stores Co. v. First Hartford Corp.*, 435 F. Supp. 849 (D. Conn. 1977) ......................6

*Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184 (8th Cir. 1996)................................4

*ReMedPar, Inc. v. AllParts Med., LLC*, 683 F. Supp. 2d 605 (M.D. Tenn. 2010) ......................13

*Sheldon v. Plot Commerce*, No. 15-cv-5885(CBA)(CLP), 2016 WL 5107072
(E.D.N.Y. Aug. 26, 2016) ................................................................................15

*Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316 (8th Cir. 2004) ..........................3

*SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975 (N.D. Cal. 2008)....................11, 12

*Tempo Music, Inc. v. Myers*, 407 F.2d 503 (4th Cir. 1969).........................................5

*United States v. American Soc'y of Composers, Authors & Publishers*, 341 F.2d
1003 (2d Cir. 1965)..........................................................................................5

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065 (6th Cir.
2014) ......................................................................................................11, 12

## STATUTES

15 U.S.C. § 45 .............................................................................................................5

18 U.S.C. § 1030...............................................................................................10, 11, 13

## OTHER AUTHORITY

Mem. of Law of Amicus FTC, *Pruitt v. Kaufman & Broad Home Corp.*, No. L-
03-CV-21 (S.D. Tex. Aug. 19, 2003) (ECF No. 23)...................................................5

1 Stephanie W. Kanwit, *Federal Trade Commission* § 12.6 (2016-2017 ed.) ...............................4

Plaintiffs CoStar Group, Inc., CoStar Realty Information, Inc., and LoopNet, Inc. (collectively, "CoStar"), respectfully submit these Suggestions in Opposition to Defendant Xceligent, Inc.'s Motion to Dismiss ("Motion" or "Mot.").

## I.  INTRODUCTION

As the Complaint avers in 158 detailed paragraphs, CoStar brought this case for one reason:  Xceligent's willful and systematic theft of CoStar's proprietary content and integration of that material into its own lower-priced rival products.  The evidence of Xceligent's wrongdoing already is overwhelming.  Xceligent-owned CommercialSearch.com contains more than 9,000 instances of CoStar-copyrighted photographs, and hundreds of Xceligent researchers have made more than 1.7 million requests for information on CoStar-owned websites.  As the Complaint alleges, this industrial-scale harvesting of CoStar's databases reflects a business model built on theft that cannot be explained away by blaming either rogue employees or Xceligent's broker-customers.

In its Motion, Xceligent offers three grounds for dismissal.  First, Xceligent argues that all of CoStar's claims should be dismissed under the terms of the 2012 Consent Order between the Federal Trade Commission ("FTC") and CoStar ("FTC Order").  Mot. Ex. F.  Second, Xceligent argues that CoStar's claim under the Computer Fraud and Abuse Act ("CFAA") should be dismissed for failure to plead a cognizable loss.  Third, Xceligent argues that CoStar's Digital Millennium Copyright Act ("DMCA") claim should be dismissed for failure to allege cognizable Copyright Management Information ("CMI").  Each of these arguments fails.

Xceligent is not a party to the FTC Order and has no standing to invoke it.  And, even if Xceligent could use the FTC Order for its benefit, by the Order's own terms CoStar may protect its intellectual property through lawsuits like this one.  *See* FTC Order ¶ III.E.  Moreover, the predicate for Xceligent's argument—that CoStar seeks to hold Xceligent liable for copying

content at the request of its broker-customers, or for publishing content submitted to Xceligent by those customers—is a fiction and, for that matter, irrelevant. The Complaint expressly alleges that Xceligent's wrongdoing is management-directed, and consists of Xceligent's mass copying of CoStar-copyrighted photographs and proprietary information, from CoStar sources, *without* broker involvement. In any event, even if CoStar *had* alleged that Xceligent publishes infringing images only when submitted by brokers, or that Xceligent infringes CoStar's copyrights and breach its terms of service only when brokers ask, Xceligent would remain liable for its own wrongdoing. The FTC Order does not immunize unlawful acts, broker-requested or not.

As for the CFAA and DMCA claims, contrary to Xceligent's misreading of the governing law, the Complaint alleges facts sufficient to plead Xceligent's liability under both statutes. Xceligent's Motion therefore should be denied.

## II.    FACTUAL BACKGROUND

CoStar owns and operates the country's most comprehensive commercial real estate ("CRE") subscription database and most visited online CRE marketplace (called LoopNet). *See* Compl. ¶¶ 6, 10. These products "revolve[] around the company's database of professionally researched commercial real estate information and millions of copyrighted photographs." *Id.* ¶ 29. As a result, CoStar zealously protects this intellectual property at great effort and expense. *See id.* ¶¶ 40–57. Despite these efforts, Xceligent—a competitor that is part of a multi-billion dollar English conglomerate—has decided to build its rival products on CoStar's back by hiring researchers in the United States and abroad to (1) bypass CoStar's anti-piracy measures and (2) steal CoStar's intellectual property. *See id.* ¶¶ 58–77, 100–102.

As the Complaint repeatedly emphasizes, CoStar does not seek to hold Xceligent liable for the conduct of non-party brokers who provide their own data or photographs to Xceligent; nor does it seek to hold Xceligent accountable for simply displaying the same information in its

products that exists in CoStar's products.  *See, e.g.*, *id.* ¶¶ 3, 60, 80.  Instead, the Complaint

charges that Xceligent systematically stole CoStar-copyrighted photographs and professionally

researched data from the LoopNet website and CoStar subscription database, in violation of

federal law and the products' contractual Terms of Service.  *See id.* ¶ 77.

## III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  For purposes of

a motion to dismiss, the court must "take all factual allegations as true and construe all

reasonable inferences in the plaintiff's favor."  *Henley v. Brown*, 686 F.3d 634, 636 n.1 (8th Cir.

2012) (citing *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004)).

## IV.  ARGUMENT

### A.  The FTC Order Does Not Bar CoStar's Claims.

Xceligent argues that the FTC Order bars CoStar from bringing all the claims asserted

against it, or that the Order somehow grants Xceligent immunity with respect to all claims

arising from its theft of CoStar's intellectual property.  *See* Mot. at 8–9.  This argument fails at

each step in the relevant analysis.  First, Xceligent is not a party to the FTC Order, and therefore

has no standing to invoke it as a basis to dismiss CoStar's claims on a motion to dismiss.

Second, even if a non-party could rely on an FTC order for this purpose, the FTC Order at issue

permits CoStar to protect its intellectual property and bring cases against competitors like

Xceligent who steal that property.  Third, the predicate underlying Xceligent's theory of

breach—that CoStar's claims are based on broker-directed copying, or broker submissions of

their own content—has the Complaint exactly backwards.  In fact, the Complaint alleges at length that the copying and publication *cannot* be explained by broker requests or submissions. Moreover, even under Xceligent's rewriting of the Complaint, it would not be insulated from liability merely because some brokers had instructed it to infringe CoStar's copyrights or breach its Terms of Service.  For these reasons, Xceligent's reliance on the FTC Order is misplaced and its request for wholesale dismissal of the Complaint based on the FTC Order should be denied.

### 1. Xceligent Cannot Rely on an FTC Order as a Basis to Dismiss the Complaint.

As a threshold matter, Xceligent cannot rely on an FTC order as a basis to dismiss this lawsuit.  Xceligent does not cite a single case, nor is CoStar aware of one, in which a court granted a motion to dismiss on the grounds that a plaintiff was barred from bringing suit under an FTC consent order.  This is not surprising.  As the Supreme Court has recognized, a non-party to a consent decree has no private right of action to enforce it.  *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it[,] even though they were intended to be benefited by it."); *see also* 1 Stephanie W. Kanwit, *Federal Trade Commission* § 12.6 (2016-2017 ed.); *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1187 (8th Cir. 1996) (holding that there is no private cause of action for violations of the Federal Trade Commission Act). Moreover, "[c]ases involving antitrust consent decrees have hewed closely to the *Blue Chip* rule barring any person not directly participating in the consent decree from suing to enforce its terms." *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 764 (D.N.J. 1999) (quotation omitted).

In fact, as the FTC has itself noted, "the Commission is not aware of any case in which a court has allowed third party enforcement of a consent order that resulted from a government

enforcement action to proceed where the parties have not conferred enforcement rights on third parties." Mem. of Law of Amicus FTC, *Pruitt v. Kaufman & Broad Home Corp.*, No. L-03-CV-21 (S.D. Tex. Aug. 19, 2003) (ECF No. 23) (Ex. A.).[1] This is true even if the relevant third party is the party that stands to benefit from the consent decree. *See Biovail*, 49 F. Supp. 2d at 763.

The justifications for not allowing a non-party to enforce an FTC order are straightforward. First, the FTC Act expressly states that civil penalties and injunctive relief "may be recovered in a civil action *brought by the Attorney General of the United States*." 15 U.S.C. § 45(*l*) (emphasis added). Second, as the FTC has argued:

> Leaving the choice and power to enforce or modify [an FTC Consent Order] in the government's hands achieves a desirable result. It forecloses the possibility that a multitude of parties with conflicting interests will become entangled in subsequent proceedings in the action, and at the same time affords those parties affected by the decree sufficient protection of their rights.

Mem. of Law of Amicus FTC, No. L-03-CV-21 (citing *United States v. American Soc'y of Composers, Authors & Publishers*, 341 F.2d 1003, 1008 (2d Cir. 1965)).

The cases cited by Xceligent on this point are inapposite: None concerns an FTC Order. None concerns a supposed covenant not to sue. And none was decided on a motion to dismiss. More importantly, these cases stand for a very different and more narrow proposition; namely that a defendant may, in limited circumstances and with the appropriate evidence, rely on a judicial antitrust consent order to establish the equitable affirmative defense of unclean hands. *See Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 (4th Cir. 1969) (reversing *after trial* on the grounds that plaintiff's actions proven at trial violated the terms of a court-mandated consent judgment thereby violating "the ancient equitable doctrine of 'unclean hands'"); *Am. Security Co. v. Shatterproof Glass Corp.*, 268 F.2d 769, 772, 776 (3d Cir. 1959) (affirming *summary*

---

[1] CoStar has filed concurrently a request for judicial notice of Exhibit A.

*judgment* ruling on the grounds that plaintiff's failure to follow contractual licensing provisions contained in an antitrust consent decree rendered its hands unclean); *Allen-Myland, Inc. v. IBM Corp.*, 746 F. Supp. 520, 538–40 (E.D. Pa. 1990) (concluding *after trial* that plaintiff was barred from asserting certain claims due to its unclean hands in violating a judicial consent decree).[2] Xceligent makes no such "unclean hands" argument in its motion to dismiss, nor could it. "Unclean hands" is an affirmative defense that must be raised in an answer, not grounds for dismissal. *Deckard v. GMC*, 307 F.3d 556, 560 (7th Cir. 2002) ("[T]he existence of a[n affirmative] defense does not undercut the adequacy of [a] claim." (citing *Gomez v. Toledo*, 446 U.S. 635, 639–41 (1980))).

Ultimately, Xceligent seeks to use the FTC Order—despite not being a party to it—as a means affirmatively to "enforce" some amorphous covenant not to sue that it believes, albeit mistakenly, is part of the agreement between CoStar and the FTC. Accepting the novel argument at this stage in the litigation would not only require the Court to step into the shoes of the FTC and interpret the meaning of the FTC Order as a matter of law, but would also permit an end-run around the longstanding presumption against non-party enforcement of FTC orders. Xceligent's novel attempt to invoke the FTC Order in a motion to dismiss should be rejected.

---

[2] The *Allen-Myland* court cited approvingly to *May Dep't Stores Co. v. First Hartford Corp.*, 435 F. Supp. 849, 853–54 (D. Conn. 1977), for the proposition, relevant here, that "to permit the collateral use of [a] consent decree . . . runs contrary to its contractual nature because nothing in the decree indicates that the parties intended third party enforcement . . . The F.T.C.'s discretionary power would be severely diminished if private litigants were able to compel the enforcement of its orders, and that would be the effect of permitting third parties to raise violations of the orders as a defense to an otherwise valid contract." 746 F. Supp. at 551.

2. **Even if a Non-Party Could Invoke an FTC Order, This FTC Order Expressly Permits CoStar To Protect Its Rights.**

Even assuming, for the sake of argument, that a non-party could rely upon an FTC order as a basis to dismiss legal claims, Xceligent cannot rely on this FTC Order for that purpose. The plain text of the FTC Order expressly provides that "[n]othing in this Order shall be construed to prohibit or prevent [CoStar] from requesting *any legal or equitable relief or remedy of any kind in any action* commenced in state or federal court or in any arbitration proceeding." FTC Order ¶ III.E (emphasis added).

Moreover, the Order expressly allows CoStar to protect its intellectual property. For example, CoStar may prohibit customers from "*downloading or otherwise providing all or any portion of a CoStar Database to any Person.*" *Id.* ¶ III.A.1.(i) (emphasis added).[3] And, although the FTC Order implements certain procedural requirements before CoStar may terminate customer contracts, the Order provides that CoStar may suspend or terminate the provision of commercial real estate information (a) if the customer is violating the intellectual property or use restrictions in its contract, *id.* ¶ III.C.3.a, or (b) if an individual has allowed other individuals to use his or her user name or password to access CoStar products, *id.* ¶ III.C.1.

Xceligent's argument that CoStar is not permitted to protect its intellectual property in a suit such as this one stands in direct contrast to the Order. Even if the Court were willing to

---

[3] Xceligent argues that the FTC Order "specifically *excludes* the broker-sourced non-subscription LoopNet database." Mot. at 6 (citing FTC Order at ¶¶ I.N, I.R). Not so. The Order defines "CoStar Database" as "an organized collection of CRE Listings [as defined in ¶ I.Q] or CRE Information [as defined in ¶ I.P] owned solely by Respondent CoStar . . . supporting CoStar's CRE Product Offerings." FTC Order ¶ I.N. "CRE Product Offerings" is then defined in ¶ I.R to include *LoopNet* Premium Lister and *LoopNet* Premium Subscriber. Although Xceligent's misreading does not affect the legal analysis, it underscores the danger inherent in allowing a non-party to rely upon the FTC Order.

create new law and rely upon an FTC order as a basis to dismiss a case against a non-party like Xceligent, it would be inappropriate to do so here given the FTC Order's express terms.

### 3. Xceligent's Legal Arguments Regarding the FTC Order Fail To Address the Factual Allegations Actually Made in the Complaint.

Xceligent's legal arguments independently fail because they do not address the actual allegations in the Complaint. Specifically, Xceligent argues that CoStar "effectively seek[s] to prohibit brokers" from "provid[ing] *their own photographs* or information" to Xceligent and "hold Xceligent liable for displaying *the brokers' photos* and information, merely because the brokers use CoStar Connect to display their listing or because that information *may happen to also reside on LoopNet's publicly-accessible database*." Mot. at 9 (emphases added). Further, Xceligent argues that CoStar concedes in the Complaint that "to the extent Xceligent updates listing from LoopNet it does so 'per [Xceligent's] customers' request," such that it is "irrelevant that Xceligent researchers contribute photos and data to the CommercialSearch site." *Id.* at 8 (emphasis omitted).

The Complaint does no such thing. At no point in the Complaint does CoStar seek to hold Xceligent responsible for *brokers* who provide their *own* photographs or information to Xceligent. Instead, the Complaint seeks to hold Xceligent responsible for (1) *Xceligent's* unauthorized access to and improper use of the CoStar databases (both LoopNet *and* CoStar's subscription database);[4] and (2) *Xceligent's* wholesale theft of *CoStar-copyrighted* photographs

---

[4] Also misguided (and improper on a motion to dismiss) is Xceligent's effort to allege that LoopNet is a freely accessible database containing *only* listings and photographs derived from brokers that are distinct from the content and photographs available in subscription databases. *See* Mot. at 3. As CoStar pleaded, LoopNet relies not just on "broker-generated content" but also on "CoStar-copyrighted photographs and professionally researched information," Compl. ¶ 10, and LoopNet permits "non-registered users to view *some* listings for free," not all. *Id.* ¶ 35 (emphasis added). This is not news to Xceligent; its CEO says that Xceligent's products function similarly. *Id.* ¶ 80.

and *CoStar-researched* data from those databases.  *See, e.g.*, Compl. ¶¶ 19–20, 63, 80, 103, 110.

In the words of the Complaint:

> 60.  Although Xceligent, part of a multi-billion dollar conglomerate, has more than enough resources to compete fairly, Xceligent's business model is based on theft from CoStar.  ***Instead of focusing on developing broker lists, contacting those brokers to get relevant information about their properties, and taking original photographs of commercial real estate, Xceligent's "research" apparatus consists, in significant part, of mass copying CoStar's information and photographs market-by-market.***

Moreover, contrary to Xceligent's statement that "Plaintiffs admit that, to the extent Xceligent updates listing from LoopNet it does so 'per [Xceligent's] customers' request," Mot. at 8 (emphasis omitted), that paragraph in the Complaint merely quotes one former employee's view of Xceligent's improper conduct.  As CoStar further alleges in paragraph 80:

> 80. Setting aside the direct evidence discussed above showing that Xceligent is systematically and constantly utilizing CoStar's intellectual property, ***Xceligent may try to point the finger at its customers,*** claiming that some of these copyrighted photographs were uploaded to CommercialSearch by, or at the direction of, individual brokers. ***But this cannot possibly account for all, or even a significant number, of the infringing images.***

Far from conceding that all of Xceligent's LoopNet access was the result of ad hoc requests from brokers, or that the infringing photographs were all uploaded to Xceligent's website by brokers, the Complaint specifically alleges that Xceligent affirmatively chose to steal from CoStar's subscription database and from LoopNet without broker involvement.

The Complaint accurately predicted that rather than accept responsibility for its misconduct, Xceligent would try to shift the blame to its own customers.  And the Complaint details precisely why that sort of misdirection is a non-starter by alleging, for example, (1) *Xceligent's* constant and systematic accessing of LoopNet, tens of thousands of times, making millions of requests for information, including by registered users with @xceligent e-mail addresses and huge teams of offshore researchers, Compl. ¶¶ 16, 71; (2) the copying and

publishing by Xceligent of CoStar-copyrighted images that "do *not* appear anywhere on the listing broker's marketing materials (or, for that matter, as far as CoStar can tell, anywhere else on the Internet [besides LoopNet]) alongside photos that *are* in the broker's marketing materials," *id.* ¶ 82; and (3) the systematic cropping by Xceligent of CoStar's logo and application of CommercialSearch.com's logo in the same place, *see id.* ¶ 89. These actions belie Xceligent's notion of broker-uploaded content, or ad hoc broker-directed access of broker-owned websites (e.g., websites hosted by CoStar Connect and LoopLink). *See* Mot. at 8–9.

All of that said, even if the Court were to accept both Xceligent's mischaracterization of the FTC Order and its rewriting of the facts alleged in the Complaint, *even then* Xceligent's arguments for dismissal would fail as a matter of law. The Motion seems to assume—in contradiction of the factual allegations, *see, e.g.*, Compl. ¶¶ 61–63, and without any legal justification—that if brokers direct Xceligent to infringe CoStar-copyrighted photos, or to use CoStar databases to acquire listing information in breach of contractual terms of use, then Xceligent is immune from all legal liability to CoStar. Yet, Xceligent fails to identify anything in the FTC Order that could possibly be read to grant Xceligent a license to act unlawfully, nor could it. Even under Xceligent's own misguided reading of the FTC Order and the allegations in the Complaint, therefore, the Complaint is sufficient to withstand Xceligent's Motion.

**B.      The Complaint Pleads Sufficient Loss Under the CFAA.**

The CFAA protects against unauthorized access to private computers and servers. 18 U.S.C. § 1030. The Complaint alleges that Xceligent violated this statute by intentionally circumventing CoStar's security measures in order to obtain and use CoStar's proprietary content. *See* Compl. ¶¶ 144–151. Xceligent argues that the CFAA claim should be dismissed, however, because CoStar failed to allege one statutory element, a cognizable "loss." Mot. at 10–11. CoStar's allegations are more than adequate to allege sufficient loss under the statute.

The CFAA defines loss as "*any reasonable cost* to any victim, *including the cost of responding to an offense, conducting a damage assessment*, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis added). The statute thus identifies two categories of cognizable, "reasonable cost[s]": (1) costs incurred responding to a violation; and (2) consequential damages, including lost revenue, caused by interruption of service. *See Brown Jordan Int'l, Inc. v. Carmicle*, No. 16-11350, __F. 3d__, 2017 WL 359651, at *4–5 (11th Cir. Jan. 25, 2017); *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1073 (6th Cir. 2014); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009).

As a matter of law, the first category includes costs the victim incurs investigating, analyzing, or assessing a violation. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (holding Facebook had alleged CFAA loss where it spent "more than $5,000 in costs, analyzing, investigating, and responding to" defendants' unauthorized access); *Yoder*, 774 F.3d at 1073–74 (affirming jury's finding of loss based on actions "to investigate the offense and conduct a damage assessment"); *Vanderhye*, 562 F.3d at 646 (loss includes "costs incurred as part of the response to a CFAA violation, including the investigation of an offense"); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981–82 (N.D. Cal. 2008) (CFAA loss includes "the cost of discovering the identity of the offender or the method by which the offender accessed the protected information"). That is dispositive here, because CoStar alleged that it spent more than $5,000 responding to Xceligent's unauthorized access. *See, e.g.*, Compl. ¶ 150. For example, CoStar investigated IP addresses triggering its abuse monitor, uncovering more than 100 alerts attributable to Xceligent. *Id.* ¶ 68. And CoStar's investigation determined

that more than 3,000 LoopNet accounts associated with Xceligent, tied to more than 300 IP addresses, accessed LoopNet in excess of authorization. *Id.* ¶ 67. These users and those browsing anonymously from Xceligent IP addresses made over 1.7 million unauthorized requests for information. *Id.* ¶ 67. Although the precise amount CoStar incurred in responding to Xceligent's violations will not be settled until trial, CoStar has adequately alleged that its losses exceed $5,000. *See, e.g.*, *SuccessFactors*, 544 F. Supp. 2d at 980–82 (plaintiff demonstrated likelihood of success on CFAA claim where alleged loss consisted of costs of determining IP addresses used for unauthorized access, identifying information accessed, and determining response); *H&R Block E. Enters., Inc. v. J&M Sec., LLC*, No. 05-1056-CV-W-DW, 2006 WL 1128744, at *2 (W.D. Mo. Apr. 24, 2006) (declining to dismiss where plaintiff pled that "[a]s a result of defendants' unauthorized, intentional access of [plaintiff's] protected computer system, [plaintiff] has suffered damages and a loss of no less than $5,000.00, including but not limited to its costs to respond to this offense").

Xceligent argues erroneously that loss under the CFAA is limited to "a loss resulting from computer impairment or an interruption of service to their computers." Mot. 10. In so doing, Xceligent ignores copious caselaw, and, indeed, the statutory text, which provide that costs from computer impairment and loss of revenue or other consequential damages arising from interruption of service are just two of many forms cognizable loss may take. *See, e.g.*, *Brown Jordan Int'l*, 2017 WL 359651, at *4; *Yoder*, 774 F.3d at 1074. Indeed, the cases on which Xceligent relies, *see* Mot. at 11, are inapposite as the complaints in those cases, unlike CoStar's here, did not allege damages based on investigating, analyzing, and responding to

violations.[5]  CoStar's allegations concerning such costs are sufficient to support a CFAA claim.[6]

Based on the facts alleged and reasonable inferences drawn therefrom, *see Iqbal*, 556 U.S. at

678, CoStar has adequately alleged loss within the meaning of the statute.

### C.    The Complaint Alleges That Infringed CoStar Photographs Contained Copyright Management Information

The DMCA protects against the removal of "copyright management information"

("CMI") from copyrighted works.  CoStar alleges that by systematically removing the watermark

from CoStar's copyrighted photographs and replacing those watermarks with its own, Xceligent

violated this statute.  Xceligent argues that CoStar's watermark is not "copyright management

information" under the statute and, as such, this claim should be dismissed.  In so arguing,

Xceligent misapprehends the statute, the relevant caselaw, and the Complaint's allegations.

The Complaint alleges that "[w]ith respect to the more than nine thousand instances of

copyrighted CoStar photographs . . . and additional CoStar-copyrighted photographs infringed by

Xceligent to be identified in the course of discovery, CoStar's watermark constitutes copyright

management information ('CMI')."  Compl. ¶ 153.  CoStar placed this watermark on the bottom

---

[5] *See Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574, 581 (D. Minn. 2007) (complaint did not allege interruption in service or costs from responding and conducting damage assessment); *ReMedPar, Inc. v. AllParts Med., LLC*, 683 F. Supp. 2d 605, 614 (M.D. Tenn. 2010) ("Under the statute, *lost revenue* is only recoverable if it was incurred because of an interruption in service, 18 U.S.C. § 1030(g), but [plaintiff] has not alleged any disruption in its service." (emphasis added) (internal quotations omitted)); *Andritz, Inc. v. S. Maint. Contractor, LLC*, 626 F. Supp. 2d 1264, 1266 (M.D. Ga. 2009) (loss allegations insufficient because plaintiff alleged loss as a result of stolen trade secrets but did not allege costs incurred responding to the offense); *Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (loss allegations insufficient because competitor allegedly accessed proprietary pricing information, causing loss of profits).

[6] The other CoStar cases cited by Xceligent are distinguishable.  In those cases, CoStar alleged loss based on lost revenue from subscription fees after defendants accessed its subscription database without authorization, not the type of loss alleged here.  *CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 515 (D. Md. 2010); *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *3 (M.D. Fla. Apr. 8, 2009).

right corner of the infringing images and thereby identified CoStar as the copyright owner. *Id.* Contrary to Xceligent's contention, neither the text of the statute nor the caselaw concerning it require that CMI "'must convey' 'the [specific] information set forth in a notice of copyright.'" Mot. at 12. *See Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. TDC-15-2400, 2016 WL 4257457, at *7 (D. Md. Aug. 11, 2016) ("[defendant's] argument is flawed because the plain language of the statute does not equate CMI with a notice of copyright"); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304–06 (S.D.N.Y. 2011) (holding that the notations "Morel," "daniel morel," and "photomorel," which appeared next to images as part of the photographer's Twitter page, were CMI); *Cable v. Agence France Presse*, 728 F. Supp. 2d 977, 981 (N.D. Ill. 2010) (denying defendant's motion to dismiss DMCA claim "[b]ecause under the plain language of the [DMCA], the plaintiff's name and hotlink fall within the scope of 'copyright management information'"). Rather, these courts have held, as here, that the mere fact that a watermark does not contain the information in a copyright notice does not disqualify it as CMI. *See Devocean Jewelry LLC v. Associated Newspapers Ltd.*, No. 16-CV-2150 (KMW), 2016 WL 6135662, at *1 (S.D.N.Y. Oct. 19, 2016) (denying motion to dismiss DMCA claim and finding that "stylized logo" that appeared on plaintiff's video but was removed from infringing screenshots of that video was CMI).

Xceligent also argues that because CoStar's logo is a registered trademark, it cannot constitute CMI as a matter of law. *See* Mot. at 13. In support, Xceligent relies on a district court case, resolved on summary judgment after full discovery, that has been largely abrogated by the Third Circuit and, for that matter, is factually distinguishable. In *IQ Group., Ltd. v. Wiesner Publishing, LLC*, 409 F. Supp. 2d 587, 598 (D.N.J. 2006), the district court held that a trademarked logo in an advertisement was not CMI because the logo in question "did not

14

function as a component of an automated copyright protection or management system" and because the logo was one of three within the advertisement, it did not identify the copyright owner. *Id.* at 593.[7]  Neither basis for that decision applies here.

Last, CoStar does not seek protection for a *trademark* by way of the DMCA.  *Cf.* Mot. at 13.  Instead, CoStar invokes the DMCA to protect its *Copyright* Management Information, which CoStar deployed to prevent just the sort of conduct that occurred here.  Xceligent's request to dismiss the DMCA claim should therefore also be denied.

## V.    CONCLUSION

For the foregoing reasons, Xceligent's Motion should be denied or, in the alternative, if such Motion is granted in whole or in part, CoStar should be granted leave to amend.

---

[7] The court was also clear that the DMCA did "not apply to either [Plaintiff's] logo or the hyperlink, *under these facts*," *IQ Grp.*, 409 F. Supp. 2d at 591–92 (emphasis added).  The court did not hold, as Xceligent intimates, that a logo categorically cannot constitute CMI.  Multiple courts have found logos and hyperlinks to be CMI.  *Devocean*, 2016 WL 6135662, at *1; *Sheldon v. Plot Commerce*, No. 15-cv-5885(CBA)(CLP), 2016 WL 5107072, at *13 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, No. 15-cv-5885(CBA)(CLP), 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016); *Cable*, 728 F. Supp. 2d at 981.

Dated:  February 10, 2017

Respectfully submitted,

By: /s/ Nicholas J. Boyle

Eric M. Anielak - MO Bar #: 45653
Elizabeth Fessler - MO Bar #: 67169
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547

Nicholas J. Boyle (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
Matthew H. Blumenstein (*pro hac vice*)
Jonah E. Perlin (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029

*Attorneys for Plaintiffs CoStar Group, Inc., CoStar Realty Information, Inc., and LoopNet, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court on this 10th day of February 2017, to all the following counsel of record:

Robert A. Henderson
John Tyner
Amy D. Fitts
Polsinelli PC
900 W. 48th Street
Suite 900
Kansas City, MO 64112
Telephone: (816) 374-0530

Brian H. Polovoy
John Gueli
Thomas R. Mankin
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000

*Attorneys for Defendant Xceligent, Inc.*

/s/ Elizabeth A. Fessler
Elizabeth A. Fessler