# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

United States District Court
Southern District of Texas
FILED

AUG 1 9 2003  **KPJ**

Michael N. Milby, Clerk
Laredo Division

TIMOTHY D. PRUITT, individually, and
on behalf of all other persons similarly situated,

    Plaintiff,

v.

KAUFMAN AND BROAD HOME CORP., et al,

    Defendants.

Civil Action No. L-03-CV-21

## MEMORANDUM OF LAW OF AMICUS FEDERAL TRADE COMMISSION

### Introduction

The Federal Trade Commission ("Commission" or "FTC") is the federal agency

principally responsible for the protection of consumers from unfair and deceptive trade practices.

Under the Federal Trade Commission Act, 15 U.S.C. §§ 41, *et seq.* ("FTC Act"), the FTC is

empowered to prevent unfair and deceptive acts or practices in or affecting commerce.

The Commission respectfully submits this amicus brief in response to the Court's request

that it address two issues: (1) whether the plaintiff, a purchaser of a home from the defendant,

KB Home, has standing as a third-party beneficiary to enforce a 1979 administrative consent

order between the FTC and the defendant; and (2) whether the plaintiff has standing to enforce a

subsequent 1991 judicial order (reached by consent in an enforcement action brought by the

United States) that incorporated and enforced the original consent order. Relevant to this case,

both the 1979 administrative order and the 1991 consent decree require the defendant to furnish

purchasers with a warranty providing for mandatory arbitration that is binding upon the defendant but not upon home purchasers, with the defendant responsible to pay all costs associated with arbitration.

There appears to be no dispute that the defendant violated both orders in regard to the arbitration provision. The defendant admitted to this Court on March 19, 2003 that there was a "big difference" between the mandatory binding arbitration provision that it included in its warranties and the non-binding arbitration provision required by the two orders. Transcript of TRO at 16. We also note that the defendant provided this Court with incorrect and potentially misleading information when it stated, during the March 19, 2003 hearing, that the Commission was aware of KB Home's conduct but chose not to act upon it. TRO at 22, 29. On the contrary, the Commission and KB Home have struggled over this issue for many years; and throughout this period, the Commission has consistently made clear its position that KB Home is precluded under the consent order from including and enforcing an arbitration clause that is binding upon homeowners and from requiring homeowners to pay for arbitration (discussed, *infra*). Indeed, the Commission is presently poised to take further judicial actions to rectify these issues.

Despite the defendant's misconduct, the Commission concludes that it must answer the two specific questions posed by the Court in the negative. As we show below, controlling decisional law generally denies private parties standing to enforce government consent decrees; and more specifically, private parties may not enforce Commission consent orders, whose exclusive enforcement mechanism is established by Section 5(l) of the FTC Act, 15 U.S.C. § 45(l). Moreover, sound policy and prudential considerations, such as the even and consistent administration of justice, dictate that such parties should not obtain rights under a judicial

2

consent decree that are denied to them under the administrative action that gave rise to the subsequent judicial enforcement proceeding.

However, before turning to our analysis of the two questions posed by the Court, we stress that this amicus brief does not consider two issues that the Court did not ask us to address: (1) whether private contract provisions that violate a Commission order may, as a matter of contract law, be unenforceable because of such violation; and (2) whether a private party injured by a contract provision that violates a Commission order may proffer that order as evidence in support of a claim seeking either to reform the contract or to have the contract declared a nullity. In this regard, we note that courts have sometimes recognized that private parties may rely on Commission orders to support the elements of independent causes of action. For example, in *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750 (D.N.J. 1999), a generic pharmaceutical company claimed that the defendant's failure to grant certain rights regarding an existing drug violated an FTC administrative consent decree. Although the court in that case rejected the notion that the plaintiff had standing to sue to enforce the provisions of the consent decree *as such* (49 F. Supp. 2d at 763-64), it went on to clarify that the plaintiff may rely on evidence of the violation of the consent decree in establishing the elements of its own cause of action under the federal antitrust laws. *Id.* at 764-65. Similarly, in *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000), *aff'd on other grounds*, 332 F.3d 896 (6th Cir. 2003), the court ruled that the defendants' conduct in connection with an FTC consent decree could be used "as evidence in support of state [antitrust] law claims." *Id.* at 664-65.

Accordingly, our discussion below does not rule out the possibility that a violation of a Commission consent decree may be highly relevant to one or more legal theories that may be

3

available to the plaintiff, such as unconscionability or unenforceability due to conflict with public policy. Such theories, however, would be governed by state contract law, in which the Commission has no special expertise or experience. With this important caveat, we proceed to discuss the issues on which the Court has requested the Commission's views.

## STATEMENT OF THE CASE

In 1979, the FTC issued an administrative consent order prohibiting KB Home – a California-headquartered builder and seller of residential housing – from, *inter alia*, making misrepresentations of fact and using other unfair or deceptive acts or practices in the construction and sale of residential housing. *See Kaufman and Broad, Inc.*, 93 F.T.C. 235, 247-62 (1979). Among other things, the order requires KB Home to make timely warranty repairs and to furnish home purchasers with a warranty "substantially identical" to the Home Owners Warranty Corporation ("HOW") warranty (then in use), "including the procedures for the settlement of disputes." *Id.* at 253-54. The HOW warranty covers various new home systems, mechanical components, and structural defects and established standards for repair of covered items. *Id.* at 263-79. Although the HOW warranty mandates that warranty disputes be arbitrated, the arbitration is free to the homeowner and the result is binding only on KB Home. *Id.* at 267.

In 1991, after receiving a referral from the FTC regarding various alleged violations of the 1979 consent order, the U.S. Department of Justice ("DOJ") instituted a civil penalty action in the United States District Court for the Southern District of California, pursuant to Section 5(l) of the FTC Act. The complaint alleged that KB Home and related corporate entities had violated several provisions of the Order, including the provisions requiring KB Home to make

4

timely warranty repairs and to make certain affirmative disclosures to consumers. The court entered a consent decree wherein KB Home settled the action by (1) paying a civil penalty in the amount of $595,000, and (2) stipulating to a permanent injunction against any further violations of the FTC's 1979 consent order. *See United States v. Kaufman & Broad Home Corp.*, Civil Action No. 91-872 (S.D. Cal. July 9, 1991).

In 1995, KB Home sought an FTC staff advisory opinion regarding whether it could furnish KB Home purchasers with a warranty that required arbitration of warranty disputes that would be binding on all parties rather than just KB Home, even though it conceded that such a requirement was prohibited by the consent order. The company argued that being tied to a 1979 HOW warranty seemed inappropriate in 1995, especially considering the trend in the law favoring arbitration and the fact that the KB Home warranty provided 10 years of coverage for major construction defects, whereas HOW coverage was only for four years. The staff opined that Part III.B of the consent order would not permit this practice because a warranty providing for arbitration that was binding on consumers would not be substantially identical to the HOW warranty. The staff further informed KB Home that it was free to seek an advisory opinion from the Commission or to seek modification of the consent order. KB Home never sought either.

The FTC staff subsequently opened an investigation after receiving complaints primarily regarding construction defects and the quality and timeliness of warranty repairs. These consumer complaint allegations raised many complex issues concerning building codes, design and repair practices, local building standards, highly fact-specific questions regarding the appropriateness of repairs in a wide variety of circumstances, and the interpretation of

5

warranties.[1]  During its investigation, staff learned that KB Home was providing new home

purchasers with warranties containing mandatory binding arbitration provisions, despite having

been advised by the staff that doing so would violate the consent order.  In December 1999, FTC

staff put KB Home on notice that its practice of furnishing home purchasers with warranties

requiring homeowners to submit to mandatory binding arbitration of warranty disputes violated

both the 1979 administrative consent order and the 1991 consent decree.  Additionally, FTC staff

informed KB Home's counsel that the consent order and consent decree prohibited KB Home

from imposing the costs or fees of arbitration on homeowners.

Over the next year, the staff continued to exert pressure upon KB Home regarding its use

of mandatory binding arbitration.  In February 2001, KB Home advised the staff that it would

cease providing warranties that require homeowners to resolve warranty disputes through

mandatory binding arbitration and further assured the staff that it would not enforce the

"binding" aspect of the arbitration of claims brought pursuant to those warranties that included

mandatory binding arbitration clauses.  Despite this assurance, however, KB Home continued to

provide home purchasers with warranties requiring mandatory binding arbitration.  In June 2001,

in an apparent effort to come into compliance with the order, KB Home assured the Commission

*in writing* that it would no longer enforce the binding arbitration provisions and that it would

assume the costs of arbitration.  Exh. 1, letter dated June 28, 2001 from Barton Pachino to James

Prunty.

---

[1]  Some of these issues have since been resolved and are not the subject of current
investigatory efforts.

6

In December 2002, the staff first learned that KB Home was not abiding by its promises in the June 28, 2001 letter.[2]  The staff thereupon investigated this issue, and received written proof that KB Home was in fact enforcing the binding arbitration provisions.  On March 13, 2003, the staff contacted Elroy H. Wolff, KB Home's District of Columbia counsel, and told him that they knew of the present litigation, that KB Home's conduct was inconsistent with the promises it had made in the June 28, 2001 letter, and that if the company did not resolve this issue, the Commission staff would recommend referral of the matter to the DOJ to pursue civil penalties or civil contempt.

On March 19, 2003, KB's counsel in the present case - who was not present during the March 13, 2003 conversation - stated to the Court that the Commission "fail[ed] to act when they (*sic*) have knowledge of what was going on," TRO at 22, and that "[the Commission was] currently choosing not to act," TRO at 29, even though the company was aware at the time that the FTC was in fact investigating the issue and was again taking steps to terminate the practice. Soon after, the staff heard from the plaintiff's counsel about KB Home's misrepresentations to the Court.  The staff advised KB Home that it would review the transcript of the March 19, 2003 hearing to determine whether the company had misled the Court and that if it had, the FTC would correct the record itself unless KB Home did so.  KB Home responded on April 22, 2003 in a filing with the Court entitled "Advisory to the Court Regarding the Position of and Actions taken by the FTC," as well as a letter addressed to the Court.  Exh. 2.  These documents did not advise the Court that KB Home had made written commitments to the Commission that it would

---

[2]  Throughout the period between June 2001 and December 2002, the Commission had been actively investigating other complaints regarding housing defects and failed warranty repairs by KB Home.

7

(1) inform homeowners requesting arbitration that the results would not be binding, (2) refrain from enforcing binding arbitration in the future, and (3) assume all arbitration costs.

The FTC staff expressed its dissatisfaction with the April 22, 2003 documents filed with the Court. On May 1, 2003, KB Home sent another letter to the Court noting that by letter to the FTC dated June 28, 2001, KB Home had assured the Commission that it would not enforce binding arbitration against homeowners. Exh. 3. KB did not mention its prior commitment to the Commission to pay all costs of arbitration for homeowners; and although KB Home admitted that it had enforced mandatory binding arbitration in a "few instances," it failed to disclose that it engaged in a pattern and practice of informing homeowners that they would be required to submit their claims to binding arbitration if they were not able to reach informal resolution of their warranty disputes.[3] The letter also failed to advise the Court that the staff had written KB Home on several occasions in early 2001 demanding that KB Home "immediately" cease including mandatory binding arbitration clauses in its warranties.

On June 26, 2003, KB Home circulated a letter to the Court, the FTC, and the parties expressing its intention to correct its misconduct. However, although the orders require KB Home to absorb all arbitration costs, KB Home's ostensible correction calls for a cost-sharing

---

[3]     FTC staff recently learned that KB Home has been using terms requiring mandatory binding arbitration specifically targeted at warranty claims in their home purchase agreements to circumvent the requirements of the Order. Staff has also received numerous letters in which KB Home attorneys instruct homeowners that if warranty disputes are not settled informally, homeowners will be required pursuant to the terms of their purchase agreements to submit their claims to binding arbitration. KB Home takes the position that this does not violate the FTC order or its prior commitments not to "enforce" binding arbitration. Finally, KB Home also only recently revealed that it began furnishing home purchasers in Texas and Colorado with warranties providing for mandatory binding arbitration of disputes as early as 1996. *See* Attachment to June 30, 2003 letter from KB Home to the Court.

8

policy that could effectively dissuade many home purchasers from pursing their claims. Accordingly, its new proposal does not appear to comply with the orders, or with the commitments the company made to the Commission in its June 28, 2001 letter. Therefore, in an effort to bring KB Home into compliance with the orders, the FTC staff is currently preparing a recommendation for the Commission's consideration regarding appropriate steps to address this matter.

## ARGUMENT

The statutory mechanism for enforcing FTC administrative orders provides in pertinent part that civil penalties and injunctive relief "may be recovered in a civil action brought by the Attorney General of the United States." 15 U.S.C. § 45(l). Courts that have addressed the question of private enforcement of FTC consent decrees have concluded that third parties have no standing. *Biovail*, 49 F. Supp. 2d at 763; *Cardizem*, 105 F. Supp. 2d at 664-65. The Fifth Circuit has not yet addressed whether a private party has standing to enforce an FTC consent decree or any other consent decree resulting from a governmental enforcement action. However, the overwhelming majority of courts that have considered the issue have either rejected the proposition that third parties may enforce a government consent decree or have limited such rights to circumstances that do not apply here.

A.   **Controlling Authorities Disallow Third Party Enforcement of Government Consent Decrees**

The Supreme Court has expressly rejected arguments that private parties have standing to enforce government consent decrees. *See Blue Chip Stamp v. Manor Drug Stores*, 421 U.S. 723

9

(1975).  In *Blue Chip*, the government and Blue Chip Stamp had entered into a consent decree

wherein the company was obligated to offer shares of its stock to the plaintiff at a "bargain"

price.  *Id.* at 725-727.  The plaintiff did not purchase these shares, however, because it was

dissuaded by a deceptive prospectus issued by the company.  *Id.* at 726-727.  Subsequently, the

plaintiff attempted to sue the company under the antifraud provisions of the Securities Act, 15

U.S.C. § 78j(b).  *Id.* at 726-727.  On appeal, the Ninth Circuit determined that although

individuals who do not purchase or sell stocks are precluded from pursuing an action under these

laws, the plaintiff here nonetheless had standing to sue because the consent decree vested upon

the plaintiff contractual rights to buy shares.  *Id.* at 749-750.

The Supreme Court opinion focused on whether enforcement of the antifraud provisions

is correctly restricted to persons who purchased or sold stocks, as the Second Circuit had

concluded in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert denied*, 343 U.S. 956

(1952).  *Id.* at 727-749.  However, to address the Ninth Circuit's opinion, the Supreme Court also

discussed the issue of third party enforcement of consent decrees and determined that the consent

decree did not confer standing upon the plaintiff.  *Id.* at 750.  In so ruling, the Court reaffirmed

the general rule that third parties may not enforce a consent decree:

> A well-settled line of authority from this Court establishes that a
> consent decree is not enforceable directly or in collateral proceedings
> by those who are not parties to it even though they were intended to
> be benefitted by it.

*Id.*

Although the Supreme Court's pronouncement in *Blue Chip* appears to leave little room

for third parties to assert any rights under a consent decree, the lower courts have struggled to

10

apply it, with some courts adhering strictly to a broad reading of *Blue Chip* and others adopting the position that general contract principles determine whether a consent decree is enforceable by third parties. Among the latter courts, some have shown particular reluctance to permit third parties to enforce a consent decree that resulted from government law enforcement. As shown below, while it is difficult to reconcile the varying approaches adopted by the lower courts, the plaintiff has no standing to enforce the 1979 consent order or the 1991 consent decree under even the most generous theory of third party enforcement.

### B.   Courts Interpret *Blue Chip* to Prohibit or to Strictly Limit Third Party Enforcement of Consent Decrees.

Although the Supreme Court's discussion of the consent decree issue in *Blue Chip* arose in a particular statutory context, some lower courts have construed it broadly to preclude third parties from enforcing consent decrees, directly or indirectly. The broadest reading of *Blue Chip* arose in the Sixth Circuit, which held: "the plain language of *Blue Chip* indicates that even intended [third-party] beneficiaries to a consent decree lack standing to enforce its terms." *Aiken v. City of Memphis*, 37 F.3d 1155, 1167-68 (6th Cir. 1994). The court of appeals in *Aiken* recognized that its conclusion was contrary to the holdings in other circuits, but added: "we are unable to join them until the Supreme Court revisits the unequivocal language of *Blue Chip*." *Id.* at 1168. *Accord, Vogel v. City of Cincinnati,* 959 F. 2d 594 (6th Cir.), *cert. denied,* 506 U.S. 827 (1992) (disappointed applicant for city police force has no standing to pursue a damages claim against city based on alleged erroneous interpretation of consent decree entered previously in action in which the applicant was not a party); *Golden v. National Finance Adjusters*, 555 F.

11

Supp. 42, 46 (E.D. Mich. 1982) (nonparty may not enforce consent decree or seek a declaratory judgment interpreting the rights under the decree because no case or controversy exists).

While the Sixth Circuit has construed *Blue Chip* broadly to prohibit virtually any third party enforcement of consent decrees, other courts have limited *Blue Chip*'s reach to preclude only so-called "incidental beneficiaries" from enforcing consent decrees. According to the majority of these circuits, consent decrees are contractual arrangements that are given the status of a judicial decree. For example, in *Hook v. Arizona Dep't of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992), the Ninth Circuit held that prison inmates had standing to enforce a judicial consent decree that had been negotiated by previous inmates. The Court there reasoned that under "established contract principle[s]," intended third party beneficiaries may enforce an agreement. Distinguishing "[t]he holding in *Blue Chip* [as] * * * limited to *incidental* beneficiaries or beneficiaries of consent decrees where the government [is] the plaintiff," the Court held that the principle articulated in *Blue Chip* "does not apply to intended third party beneficiaries." *Id.* at 1015 (emphasis added). Accordingly, the Ninth Circuit concluded the subsequent inmates were "*intended* third party beneficiaries that have standing to enforce the rights of the [prior] inmates under the consent decree." *Id.*

Applying a similar analysis, other circuits have recognized that third parties have standing to enforce the terms of a consent decree where there is an understanding that the third parties are "intended beneficiaries" with enforcement rights. *See, e.g., Floyd v. Ortiz*, 300 F.3d 1223, 1225 (10th Cir. 2002) (another prisoner case in which the parties agreed during the hearing regarding the original consent decree that the agreement would be to the benefit of, and would be enforceable by, all inmates, and not just the named plaintiffs). Still other courts at least in theory

12

recognize standing for an "intended beneficiary," but require that such beneficiaries demonstrate that the parties to the decree intended to confer enforcement rights on third parties. As the D.C. Circuit explained in *SEC v. Prudential Securities, Inc.*, 136 F.3d 153 (D.C. Cir. 1998):

> Third parties to a consent decree, involving the government or not, must demonstrate that they are the intended beneficiaries in order to have enforcement rights * * *. The test is not * * * only whether the contracting parties intended to confer a benefit directly on the third parties, *but also whether the parties intended the third party to be able to sue to protect that benefit.*

*Id.* at 159 (emphasis added).[4] *Accord, Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002); *Rafferty v. Nynex* Corp., 60 F.3d 844, 849 (D.C. Cir. 1995); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993); *Township of South Fayette v. Allegheny County Housing Authority*, 27 F. Supp. 2d 582 (W.D. Pa. 1998), *aff'd*, 185 F.3d 863 (3d Cir. 1999).

In the case of government consent orders, which are intended for the general benefit of the public, third parties have a particularly heavy burden to carry. In cases where the government is the plaintiff, courts assume that third parties are mere incidental beneficiaries to consent decrees and therefore are precluded from enforcing them absent a clear expression of a different intent on the part of the parties. *See, e.g.*, *Hook*, 972 F.2d at 1015; *Restatement (Second) of Contracts* § 313(2) comment a (1981) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested"). As the D.C. Circuit explained in *Prudential Securities, Inc.*, while "the

---

[4] The D.C. Circuit, however, "[left] for another day consideration of whether authorization of third party enforcement must invariably be explicit." *Prudential Securities, Inc.*, 136 F.3d at 159. *But see Biovail*, 49 F. Supp. 2d at 763 ("[T]o have standing as a nonparty to enforce a government consent decree, one must show that the government explicitly authorized third party enforcement").

13

fact that the government is involved [in a consent decree] is not in itself fatal to third party enforcement," courts are "loath to allow third parties to enforce consent decrees when the government is involved * * * because the government usually acts in the general public interest." 36 F.3d at 158.

## C.     The Administrative Order and Consent Decree Do Not Provide Third Party Enforcement Rights

These governing principles show that the plaintiff has no standing to enforce either the 1979 administrative consent order or the 1991 court order requiring KB Home to adhere to the terms of the earlier agreement.  First, the FTC Act itself expressly provides for enforcement only by the way of "civil actions brought by the Attorney General of the United States."  15 U.S.C. § 45(l).  As in *Blue Chip*, the underlying statutory framework does not allow a private right of action by the plaintiff.  421 U.S. at 730-749.  Second, nothing in the language of the 1979 administrative decree confers enforcement rights upon third parties.  Instead, the 1979 consent order is silent regarding that issue.  *Kaufman and Broad, Inc.*, 93 F.T.C. 235 (1979).  In the context of a government consent decree, such silence regarding the enforcement rights of third parties is powerful evidence that the parties did not intend to confer such rights.  *See Rafferty*, 60 F.3d at 849 (denying standing to enforce in part because "the decree nowhere authorizes a third party to enforce its obligation"); *Biovail*, 49 F. Supp. 2d at 763 (even though the third party was named specifically as the only beneficiary to an FTC consent decree, it had no standing as a nonparty to enforce the consent decree because the government had not explicitly authorized third party enforcement); *Cicirello v. New York Telephone Co.*, 123 F.R.D. 523, 526 (E.D.Pa.), *aff'd*, 879 F.2d 855 (3d Cir.), *cert. denied* 110 S.Ct. 326 (1989) (no third party enforcement

14

where a government consent decree "does not * * * contemplate enforcement by third parties");

*Dahlberg v. Avis Rent a Car System, Inc.*, 92 F. Supp. 2d 1091, 1107 (D. Colo. 2000) (same).[5]

Indeed, the Commission is not aware of any case in which a court has allowed third party

enforcement of a consent order that resulted from a government enforcement action to proceed

where the parties have not conferred enforcement rights on third parties. Inasmuch as there are

no private causes of action under the FTC Act (*e.g., Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2

(5th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979); *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*,

499 F. 2d 232, 237 (2d Cir. 1974); *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986 (D.C. Cir.

1973)), it would seem anomalous to allow such private enforcement of an FTC consent decree.

As for the 1991 order, it is crucial to bear in mind that the order is the product of a civil

enforcement action brought by the Attorney General to enforce the 1979 administrative consent

order. That civil action sought civil penalties and injunctive relief. It did not seek, nor could it

have sought, to create any new rights or obligations unrelated to the original consent order.

Moreover, the language used by the parties to describe the enforcement scheme is notable for its

failure to confer enforcement rights on third parties. Specifically, that court retained jurisdiction:

> for the purpose of enabling any of *the parties* to this Consent Decree to apply to
> the Court at any time for such further orders or directives as may be necessary or
> appropriate for the interpretation or modification of this Consent Decree, *for the
> enforcement or compliance therewith*, or for the punishment of the violations
> thereof.

---

[5] Plaintiff does not appear to contend that the 1979 consent order or the 1991 consent decree
explicitly confer enforcement rights upon third parties, but instead asserts that these documents
*implicitly* grant him standing to enforce their obligations. *See* Plaintiff's Supplemental Briefing
in Support of his Response to Defendant's Motion to Dismiss and Reply to Defendant's
Response to Plaintiff's Request for Temporary Restraining Order at 8; Plaintiff's Response to
Defendant's Motion to Dismiss at 9.

15

Exh. 3 at ¶ 5 (emphasis added). Given this language, it is reasonable to conclude that third party

enforcement was not contemplated or intended by the parties to the decree. *Cf. Dahlberg*, 92 F.

Supp. 2d at 1107 (parties to settlement agreement did not intend to confer enforcement rights to

third parties where settlement agreement reserved to DOJ the right to review compliance with

settlement agreement and institute civil action).[6]

### D.     Enforcement of Government Consent Orders by Third Parties Creates a Potential for Inconsistent and Conflicting Determinations

There is good reason to use particular caution in allowing a private party to assert third-

party beneficiary status as to a government consent decree. As the Second Circuit has explained,

> Leaving the choice and power to enforce or modify in the government's hands achieves a desirable result. It forecloses the possibility that a multitude of parties with conflicting interests will become entangled in subsequent proceedings in the action, and at the same time affords those parties affected by the decree sufficient protection of their rights.

---

[6] The foregoing contract analysis is fully consistent with provisions of the Federal Rules of Civil Procedure relating to enforcement of judicial decrees by nonparties. Under Fed. R. Civ. P. 71, "[w]hen an order is made *in favor of* a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party * * *" (emphasis added). Rule 71 thus authorizes "a non-party who establishes standing to pursue enforcement of that agreement or decree as a third-party beneficiary." *Hook*, 972 F. at 1012; *Washington Hosp. v. White*, 889 F. 2d 1294, 1299 (3d Cir. 1989); *Gautreaux v. Pierce*, 743 F.2d 526, 533 (7th Cir. 1984). But while Rule 71 allows nonparties to enforce orders made in their favor, it cannot be invoked by third parties to enforce an order in an action in which they have no standing to sue. *See Moore v. Tangipahoa Parish School Bd.*, 625 F.2d 33, 34 (5th Cir. 1980); *Lasky v. Quinlan*, 558 F.2d 1133 (2d Cir. 1977); *Lavapies v. Bowen*, 687 F. Supp. 1193, 1207 (S.D. Ohio 1988), *aff'd,* 883 F.2d 465 (6th Cir. 1989) ("Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree.") (citations omitted). It is doubtful, moreover, whether plaintiff could maintain this action in this judicial district even assuming that he could establish that he otherwise is authorized to enforce the terms of the consent order. A trial court retains jurisdiction to enforce its consent decrees. *See, e.g., Beckett*, 995 F.2d at 286; *Hook*, 972 F.2d at 1014. Given the district court's retained jurisdiction in the Southern District of California, the proper procedure would be to institute an action in that judicial district.

16

*United States v. American Soc'y of Composers, Authors and Publishers*, 341 F. 2d 1003, 1008 (2d Cir. 1965). S*ee also Prudential*, 136 F.3d at 158; *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 998 (D.C. Cir. 1973). Tracing the history of the FTC Act in detail, the court of appeals in *Holloway* explained that the original reason Congress restricted enforcement of the FTC Act to the FTC itself included avoiding a burden on the judicial system, including potentially "vexatious litigation," and development of a "central and coherent body of precedent * * *" so as to define the [FTC Act's] operative reach." 485 F.2d at 990. The court added that private actions would abrogate the FTC's ability to control matters in a way to further its priorities and enforcement goals. *Id.* at 999.

Congress has established a comprehensive framework for exclusive enforcement by the FTC of the FTC Act's prohibition against "unfair or deceptive acts or practices." It has also established a comprehensive framework for exclusive enforcement of the FTC's orders by the Attorney General working in conjunction with the FTC. Injecting private rights of action into this statutory mechanism creates a substantial risk of inconsistent and uneven enforcement decisions. The efficient administration of justice requires that parties who enter into consent agreements with the Commission know that they must deal only with the Commission (and the Attorney General) in ordering their business affairs under the terms of the consent agreement. Similarly, the Commission's efficient allocation of its resources requires that it be free to target its enforcement efforts under the priorities it (and Congress through the appropriation process) sets. Private enforcement of FTC consent orders does not advance the public interest and disrupts the orderly administration of justice.

17

## CONCLUSION

The FTC concludes that the plaintiff does not have standing to enforce the government's

consent orders against KB Home.

Respectfully submitted,

WILLIAM E. KOVACIC
General Counsel

JOHN D. GRAUBERT
Principal Deputy General Counsel

JOHN F. DALY
Deputy General Counsel for Litigation

OF COUNSEL:

ELAINE KOLISH
Associate Director for
Division of Enforcement

ROBERT M. FRISBY
Assistant Director
Division of Enforcement

PATRICIA BAK
JAMES A. PRUNTY
Attorneys

Federal Trade Commission
Bureau of Consumer Protection
Division of Enforcement
601 New Jersey Avenue N.W.
Washington, D.C. 20580
Telephone: (202) 326-2124
Facsimile:  (202) 326-2120

ROBERT L. SUSSMAN

LESLIE RICE MELMAN
Federal Trade Commission
Office of General Counsel
600 Pennsylvania Ave., N.W.
Washington, D.C.  20580
Telephone:  (202) 326-2436
Facsimile:  (202) 326-2477

18

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Memorandum of Law of Amicus Federal Trade Commission has been served by first class mail, postage prepaid, on counsel for the plaintiff and counsel for the defendant on this 18th day of August, 2003.

Alice Oliver-Parrott
David H. Burrow
Burrow & Parrott, L.L.P.
1301 McKinney
Suite 3500
Houston, Texas 77010
(Also by fax - (713) 650-6333)

Maria Teresa Arguindegui
Law Offices of Maria Teresa Arguindegui
1301 McKinney
Suite 3500
Houston, Texas 77010

Robert L. Collins
P.O. Box 7726
Houston, Texas 77270

John A. Kazen
Kazen, Meurer & Perez
1619 Matamoros Street
Laredo, Texas 78040

Daniel W. Bishop, II
Watson Bishop London & Brophy
The Littlefield Building
106 East 6th Street
Suite 700
Austin, Texas 78701

19





June 28, 2001

Via Federal Express and
Facsimile (202) 326-2558

James A. Prunty, Esq.
Senior Attorney
Division of Enforcement
Bureau of Consumer Protection
Federal Trade Commission
Washington D.C., 20580

      Re:    Your letter to Elroy Wolff of June 20, 2001(the "June 20th Letter")

Dear Mr. Prunty:

      Elroy Wolff has forwarded to me the June 20th Letter in which staff seeks responses to four issues as delineated below. Please note the following responses from KB Home:

1.    Use of KB Home Warranty – As you have noted, KB Home has previously asserted to staff that at least since the end of February 2001 it has been providing all Texas home purchasers with the KB Home Warranty. Your June 20th Letter indicates that staff has received "continuing information contradicting KB Home's assertion". Specifically, staff states in the June 20th Letter that (a) in June, 2001 one person was advised "by the KB Home sales office" at the Fields of Dover in San Antonio that KB Home provides only the RWC Warranty and (b) in April, 2001 another person reported that the "sales department in San Antonio" had advised that the RWC Warranty is the only 10-year warranty provided by KB Home.

In my June 8, 2001 correspondence to you I provided the following confirmation:

      "For the last several months and as recently as May 31, I have been repeatedly and categorically assured by our Texas operating divisions and the escrow companies which administer the closings of our homes in Texas that,

KB HOME  10990 WILSHIRE BOULEVARD  LOS ANGELES, CA 90024
TEL 310 231 4000  FAX 310 231 4222  KBHOME.COM
Case 4:16-cv-01288-FJG  Document 29-1  Filed 02/10/17  Page 22 of 44

Federal Trade Commission
June 28, 2001
Page 2

> at least since the end of February 2001, KB Home has provided *all* homeowners in its Texas operating divisions with the KB Home Warranty, prior to closing.  I would welcome being informed of any specific examples to the contrary -- which KB Home would fully investigate."

The assertion as set forth above remains accurate to the best of my knowledge.  In providing that assertion, I had repeatedly required the Texas-based members of the KB Home Legal Department to confirm this practice directly with sales management and escrow agents in each of KB Home's four Texas operations.  In each case, KB Home's Legal Department and sales and escrow management have confirmed the inclusion of acknowledgments of receipt of the KB Home Warranty by all homeowners in Texas since the end of February, 2001.

On a number of occasions, including one sequence immediately prior to my June 8, 2001 letter, such confirmations were reaffirmed with respect to KB Home's four Texas operating divisions.  Thus, it has been our practice -- since at least the end of February, 2001 -- to provide KB Home Warranties to all Texas purchasers.

In order to further assure internal compliance with KB Home's stated policy, I have circulated a memorandum to all of our Texas division presidents and sales managers -- for further distribution to all sales, marketing, and escrow coordination staffs -- and to all attorneys in the KB Home Legal Department stating that it is the absolute policy of KB Home that all homeowners receive a KB Home Warranty whether or not a third party warranty -- such as the RWC Warranty -- is utilized on a supplemental basis.  A copy of that memorandum, dated June 28, 2001, is attached as Exhibit A for your reference.

Please also see Section 5 of this Response, below.

2.    Mandatory Binding Arbitration Provisions – KB Home acknowledges that it continues to provide consumers with home warranties the text of which requires that home purchasers submit warranty disputes to mandatory binding arbitration ("MBA"). While KB Home continues to recognize the concern expressed in your January 29, 2001 letter, steps have been taken to assure that these MBA provisions are not enforced while KB Home awaits final agreement with staff regarding appropriate "going forward" language in the warranty.    These steps are consistent with correspondence to staff since earlier this year.  Indeed, in my February 7, 2001 letter I asserted the following:

> "The Company states unequivocally that it will cease providing warranties that require homeowners to resolve warranty disputes through mandatory binding arbitration ("MBA").  As set forth below, the Company will promptly adopt a warranty which effectively parallels the provisions of the HOW Warranty as contained in the Order with regard to arbitration.  In addition, the Company will

BP/FTC/Response 06/28/01

Federal Trade Commission
June 28, 2001
Page 3

offer its consumers an option to accept a warranty containing an MBA provision together with an extended, 12-year major construction defects warranty . . . .

"As staff's [January 29, 2001] letter notes, a number of other aspects of a revised warranty still need to be resolved -- such as fee structure, the use of optional binding arbitration clauses, etc. The Company commits that as soon as is reasonably practicable after resolving such issues with Staff, it will print revised warranties and begin distributing them to home purchasers."

I have verbally directed -- through a number of conference calls -- each member of the KB Home Legal Department to assure compliance with the representation made above. Since managers at KB Home's operating divisions would necessarily go through Legal Department attorneys before initiating an MBA process with respect to any given homeowner claims, it was my intention and KB Home's intention that the above-referenced communication would be sufficient to assure that the MBA provisions would not be enforced until the resolution of the Warranty content was achieved through staff. As I have asserted in prior correspondence, I believe it would be very cumbersome and awkward to simply presume what the final resolution would be of the MBA, optional MBA, fee structure and other issues and redraft the KB Warranty accordingly when the great likelihood is that a subsequent revision would also be necessary. This is problematic from two perspectives -- first, in terms of internal confusion in having to train and re-train staff and second, in terms of the costs or two re-printings of warranties.

As KB Home has repeatedly given staff its express written commitment that KB Home is willing to accept a revised warranty that did not include an MBA provision, it is therefore somewhat surprising that staff suddenly now finds KB Home's statement to be "not a satisfactory response." Under the circumstances, we believe this approach is reasonable and continue to pledge our willingness to come to a reasonable resolution as soon as possible.

The June 20th Letter also states that staff has received information contradicting KB Home's assertion that it is not enforcing the MBA provisions. Please also see Section 5 of this Response. In addition to the steps taken to communicate this policy to the Legal Department, I have circulated a second memo dated June 28, 2001, to KB Home's division presidents, customer service/warranty managers and Legal Department attorneys reminding them of the Company's policy of not enforcing MBA provisions while staff completes its process with KB Home. A copy of that memorandum is attached to this letter as Exhibit B. (This memorandum also incorporates KB Home's responses to the issues raised in Section 3, below).

3.    Arbitration Fees – While KB Home has expressed its views regarding the sharing of fees and costs in arbitration and while we believe such an approach is

BP/FTC/Response 06/28/01

Federal Trade Commission
June 28, 2001
Page 4

consistent with the Order (see KB Home's prior February 7, 2001 and March 1, 2001 letters to staff), KB Home certainly recognizes that reasonable minds may differ on this issue and appreciates staff's input. Similar to the views expressed in Section 2 of this letter, KB Home believes that this issue should be resolved as part of the final resolution of the content of the warranty.

As an interim measure, however, KB Home will agree that with respect to any arbitration that is undertaken on a voluntary basis by homeowners consistent with Section 2 above, until a finalized and revised warranty is fully negotiated by KB Home and staff, KB Home will bear all fees needed to establish and conduct an arbitration sought by a homeowner. To that end, the memorandum attached as <u>Exhibit B</u> hereto also incorporates a policy directive stating that KB Home will bear such fees should an arbitration be initiated by a homeowner. This notification should assure staff that KB Home purchasers will not be required to pay arbitration fees at least until the finalized version of the warranty is established.

4. <u>Northampton Home List</u> - You have requested that we provide you with a list of all homes sold in the Northampton subdivision after KB Home's acquisition of Rayco in April, 1996. KB Home is willing to provide the list of homes dating back to such time. Such list will include the lot, tract number, street address and closing date of each applicable home. We expect to be able to compile that list within 10 business days and that process has already been initiated. We recognize that staff plans to select a random sample of homes and to request KB Home's files relating to each of those homes as part of such review. Please let us know the aggregate number of home files you anticipate randomly selecting.

5. <u>KB Home's Request of Staff</u> – The June 20th Letter specifically referenced three concerns for which KB Home would like further information from staff. In particular, your letter described the following three scenarios:

    (a)    One person reporting in June of 2001 that sales representatives in the KB Home subdivision at the Fields of Dover advising that only the RWC warranty was provided;

    (b)    Another person reporting they were advised by the KB sales department that the RWC warranty is the only 10-year warranty provided; and

    (c)    Staff has "received information" contradicting KB Home's assertion that it is not enforcing the MBA provisions.

We would like the opportunity to receive more specific information about each of these assertions so that KB Home can internally investigate these allegations. Please provide us with details regarding these issues so we can make sure that such

BP/FTC/Response 06/28/01

Federal Trade Commission
June 28, 2001
Page 5

situations are rectified with the individuals who are accused of this behavior which is inconsistent with KB Home policies.

Thank you very much for your prompt attention with respect to the items in Section 5. We hope the information in Sections 1 through 4 of this letter is responsive to staff's concerns.

Very truly yours,

Barton P. Pachino
Senior Vice President, General Counsel

enc:   as stated
cc:    Elroy H. Wolff, Esq. (w/ enclosures)

BP/FTC/Response 06/28/01



## ATTORNEY-CLIENT PRIVILEGED
## MEMORANDUM

| To | : | Texas Division Presidents, Texas Sales Managers, and Legal Department Attorneys (via email) |
|---|---|---|
| Cc | : | Jeff Mezger |
| From | : | Bart Pachino |
| Date | : | June 28, 2001 |
| Re | : | KB Home Warranties |

Several months ago, the Legal Department became aware that, on certain occasions, divisions in Texas may have distributed "only" the RWC Warranty -- and not the KB Warranty -- to our customers.

This contradicts Company policy which requires the KB Home Warranty to be provided to all U.S. purchasers. While the RWC Warranty provides outstanding coverage to homeowners because of our obligations under the FTC Order, it is not satisfactory merely to provide that warranty to our customers without also providing the KB Home Warranty.

It is my understanding that any needed corrections with respect to this approach were undertaken during the first quarter of our 2001 fiscal year and that all homebuyers in Texas are provided with a KB Home Warranty at the time of sale and the time of closing or walk-through.

Despite these clear directives, FTC staff has alleged to us that on at least one occasion in April, 2001, the sales department of one of our Texas divisions advised a prospective purchaser that the RWC Warranty is the only 10-year warranty provided by KB Home. FTC staff has also informed us that another individual reported to them that, during the first week of June 2001, a sales office in San Antonio advised someone that KB Home provides only the RWC Warranty.

The concerns expressed by FTC staff serve as a reminder that it is *urgent* for all managers, sales staff, escrow coordination staff and other related individuals to be aware of and adhere to the strict Company policy that <u>all of our home purchasers are to be provided with the KB Home Warranty</u>. There are no exceptions.

Managerial recipients of this memo are responsible for further emailing it to all applicable sales staff, walk-through staff, customer service staff and escrow coordination staff in their division to assure compliance.

If you have any questions regarding this policy, please contact Victor Toledo in the Texas Legal Department at 210/308-6116 or Bart Pachino, Senior Vice President and General Counsel of KB Home, at 310/231-4124.

Bp/memos2001/Texas re KB Home Warranties.062801

*Exhibit A*



## ATTORNEY-CLIENT PRIVILEGED
## MEMORANDUM

| | | |
|---|---|---|
| To | : | Division Presidents, Customer Service/Warranty Managers, Legal Department Attorneys |
| Cc | : | Jeff Mezger |
| From | : | Bart Pachino |
| Date | : | June 28, 2001 |
| Re | : | Enforcement of Certain KB Home Warranty Provisions |

As you may know, certain aspects of the content of the KB Home Warranty have recently been the subject of investigation by Federal Trade Commission ("FTC") staff. The Legal Department is in the process of working through the investigation with FTC staff and we are confident that a resolution can be achieved amicably.

In particular, two issues have arisen. The first relates to enforcement of the mandatory binding arbitration provision of the Warranty. The second relates to the obligation, as contained in the Warranty, for the homeowners and KB Home to each bear one-half of the arbitration fees and costs in the absence of an arbitrator's determination regarding the allocation of fees and costs.

While these issues remain the subject of discussion between the Legal Department and FTC staff, we have committed to FTC staff that the Company will adhere to the following policies, <u>at least until such time as the staff's inquiry is resolved</u>, as follows:

1.  <u>Non-Enforcement of "Mandatory" Arbitration</u> - Even with respect to homeowners who have received warranties that include mandatory binding arbitration provisions, the "mandatory" nature of such arbitration provisions will not be enforced. Rather, homeowners who have such clauses in their warranties will be informed that, if a dispute cannot be resolved through the "Conference" or mediation procedures in the Warranty, the homeowner has the right to <u>either</u> pursue (a) a binding arbitration process or (b) an arbitration process pursuant to which each party would have the right to "opt out" of the arbitration result and pursue a different remedy in the courts.

2.  <u>KB to Bear Arbitration Fees</u> - To the extent an arbitration is necessary to resolve a Warranty dispute between KB Home and a homeowner, whether that arbitration is to be a binding arbitration or an "opt out" arbitration as described above, KB Home will bear all fees needed to establish and

Bp/memos2001/Texas re Enforcement of certain KB Home Warranty Provisions.062801

*Exhibit B*

conduct the arbitration sought by a homeowner.  Thus, when an arbitration is sought by a homeowner, it is critical that that homeowner be informed that the fee splitting rules stated in their Warranty will be waived and KB Home will bear all the fees as described in the previous sentence.

Please implement these requirements effective immediately.  Attorneys within the Legal Department have previously been informed of these interim policies and have followed them to date. It is distinctly possible that these policies will be revised when a final resolution to the current FTC investigation is reached.  At that time, a follow-up memo will be issued.  However, in the interim, these are firm policies of the Company and must be adhered to strictly.

Should you have any questions regarding these interim policies, please contact Bart Pachino or Dave Simons in the KB Home Legal Department.  Mr. Pachino can be reached at 310/231-4124 and Mr. Simons can be reached at 925/906-4589.

Bp/memos2001/Texas re Enforcement of certain KB Home Warranty Provisions.062801

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| TIMOTHY D. PRUITT | § | |
| INDIVIDUALLY AND | § | |
| ON BEHALF OF ALL OTHER | § | |
| PERSONS IN THE UNITED STATES | § | |
| SIMILARLY SITUATED, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. L-03-CV-21 |
| v. | § | |
| | § | |
| KAUFMAN AND BROAD HOME | § | |
| CORPORATION, N/K/A, KB HOME, | § | |
| KB HOME, INC., KB HOME, KB | § | |
| LONE STAR, L.P., AND KB HOME- | § | |
| LAREDO, L.P., | § | |
| Defendant. | § | |

19

## ADVISORY TO THE COURT REGARDING
## THE POSITION OF AND ACTIONS TAKEN BY THE FTC

COMES NOW, Defendants Kaufman and Broad Home Corporation, n/k/a, KB Home,

KB Home, Inc., KB Home, KB Lone Star, L.P., and KB Home-Laredo, L.P. (collectively "KB

Home") and files this Advisory to the Court regarding the position of and actions taken by the

Federal Trade Commission (the "FTC") with regard to the inclusion of and enforcement of

mandatory binding arbitration is its construction contracts and warranty agreements.

    1.    At the March 19, 2003, temporary restraining order hearing, the undersigned

counsel made certain statements to the Court regarding the position of the FTC and actions taken

by the FTC regarding the inclusion of mandatory binding arbitration in KB Home's construction

contracts and warranty agreements.  This week, KB Home's lead counsel had an opportunity to

review a copy of the transcript from the March 19, 2003, hearing and has had conversations with

Defendants' Washington, D.C., counsel after the hearing.  From his review of the transcript and

conferring with Defendants' other counsel, the undersigned believes that it is necessary to file this

Advisory to the Court to both clarify and correct statements he made at the temporary restraining

order hearing.

    2.    First, Defendants' lead counsel did not intend to suggest to the Court that the FTC

has acquiesced or even tacitly approved the inclusion or enforcement of mandatory binding

arbitration in Defendants' home construction contracts or warranties.

    3.    Second, KB Home's lead counsel was incorrect when he stated that the FTC has

taken "no action" with regard to the inclusion of mandatory binding arbitration in home

construction contracts and related warranties.   On page 15 of the transcript, the undersigned

discussed efforts by consumers and their advocates to inform the FTC of Defendants' inclusion of

mandatory binding arbitration.  Counsel also pointed out that a suit had been filed by another of

2

its homeowners in state district court in Bexar County, Texas in the year 2000 and that suit

sought to invalidate the inclusion and/or enforcement of mandatory binding arbitration in

Defendants' homeowner agreements.  Specifically, counsel stated:

> That and then a subsequent occurrence.  We were actually sued in
> 2000 or 2001 in Bear [sic] County in the state district court on the
> exact same claims.  The FTC contacted us at that time.  We let
> them know what was going on.  They took no action.

The undersigned's statements that KB Home made FTC aware of the Bexar County

litigation are accurate.  However, the statement that the FTC "took no action" is not accurate.

Although the FTC has instituted no enforcement action against KB Home or any of its

subsidiaries, after conferring with Washington D.C. counsel, the undersigned learned that since

2000, the FTC staff has been in contact with KB Home regarding inclusion of and enforcement of

mandatory binding arbitration provisions in home construction contract and home warranties.  In

connection with this inquiry, the FTC staff has recently (after the temporary restraining order

hearing) asked KB Home for information with regard to its use of mandatory binding arbitration

and has held a meeting with KB Home's Washington, D.C., counsel on that subject.  KB Home is

cooperating with FTC staff in developing a resolution of the matter that will be acceptable to FTC

staff and KB Home.

4.      Defendants file this Advisory to the Court to correct this inaccuracy and to insure

there was no misimpression created by the statements of its lead counsel.

<div style="margin-left: 40%;">

Respectfully submitted,

**THE SHAUNESSY LAW FIRM, P.C.**
1000 Norwood Tower
114 West Seventh Street
Austin, Texas  78701
(512) 542-9600 (telephone)
(512) 542-9610 (telecopier)

</div>

<div style="text-align: center;">3</div>

By:

MICHAEL SHAUNESSY
State Bar No. 18134550

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the above and foregoing has been forwarded by facsimile on this 22nd day of April, 2003 to:

Ms. Alice Oliver-Parrott
Ms. Maria Teresa Arguindegui
Mr. David H. Burrow
BURROW & PARROTT, L.L.P.
1301 McKinney, Suite 3500
Houston, Texas 77010-3092

Mr. Robert L. Collins
P.O. Box 7726
Houston, Texas 77270-7726

Mr. John A. Kazen, Of Counsel
KAZEN, MEURER & PEREZ, L.L.P.
1619 Matamoros Street
P. O. Box 6237
Laredo, Texas 78040-6237

by:

Michael Shaunessy

4

FEDERAL TRADE COMMISSION

APR 2 8 2003

ENFORCEMENT DIVISION

# THE SHAUNESSY LAW FIRM, P.C.

**1000** NORWOOD TOWER
**114** WEST SEVENTH STREET
AUSTIN, TEXAS  78701

MAIN: (512) 542-9600
FACSIMILE: (512) 542-9610

MICHAEL SHAUNESSY *
EXTENSION 1161
MIKE@SHAUNESSYLAW.COM
*BOARD CERTIFIED PERSONAL INJURY TRIAL LAW

April 22, 2003

United States District Court
Southern District of Texas
RECEIVED

APR 2 2 2003

Michael N. Milby, Clerk
Laredo Division

*Via Hand Delivery*

Honorable Keith Ellison
US District Judge
1300 Matamoros
Laredo, Texas  78040

**Re:    Civil Action No. L-03-CV-21;** *Timothy D. Pruitt Individually and on Behalf of all Other Persons in the United States Similarly Situated v. Kaufman and Broad Home Corporation, N/K/A, KB Home, KB Home, Inc., KB Home, KB Lone Star, L.P., and KB Home-Laredo, L.P.;* **In the United States District Court for the Southern District of Texas, Laredo Division**

Dear Judge Ellison:

I had an opportunity this week to review the transcript from the temporary restraining order hearing held in the above-referenced litigation on March 19, 2003.  After reviewing that transcript, there are two matters I need to call to your attention to insure that my argument at the hearing did not create a misimpression regarding the position of the FTC <u>and</u> to correct a factual misstatement that I made at that hearing.

First, I do <u>not</u> want you to be led to believe by my argument that the FTC has approved, or even tacitly acquiesced, in Defendants' (KB Home) inclusion of a mandatory binding arbitration provision in its home construction contracts or its warranties.  KB Home has always fully disclosed to the FTC its inclusion of mandatory binding arbitration provisions in home construction and warranty agreements.  Nevertheless, my arguments at the March 19, 2003, hearing should not be read as indicating that the FTC approves of the inclusion of mandatory binding arbitration in these contracts or that it believes that the inclusion of these provisions is in conformance with the 1979 FTC Consent Order or the 1991 Consent Decree.

Honorable Keith Ellison
April 22, 2003
Page 2

Second, based upon discussions with KB Home's Washington, D.C., counsel after the hearing, one of the statements I made at the hearing was inaccurate. During the argument, I pointed out to the court that KB Home has previously been sued in state district court in Bexar County, Texas, on the same issues raised by Mr. Pruitt in this suit, namely whether the mandatory binding arbitration provisions in its home purchase warranty contracts were void because they were in violation of the FTC Consent Order and the subsequent federal court Consent Decree. On page 15 of the transcript, I explained to the court that in connection with that litigation, the FTC contacted KB Home and KB Home informed FTC of its practices regarding mandatory binding arbitration, as well as making the FTC aware of the Bexar County litigation. I then stated, "They [the FTC] took no action." (*See* p. 15, ll. 9-14 of transcript March 19, 2003, hearing.) That statement is inaccurate. Although the FTC did not take a position in the Bexar County litigation and has not filed any enforcement action against KB Home, FTC staff have been in contact with KB Home regarding the FTC's concerns about the inclusion of mandatory binding arbitration in the purchase contract and warranty agreement. In fact, subsequent to the temporary restraining order hearing, the FTC staff asked KB Home for information regarding its use of mandatory binding arbitration and has held a meeting with KB Home's Washington, D.C., counsel on that subject. KB Home is cooperating with the FTC in developing a resolution of this matter that will be acceptable to the FTC staff and KB Home.

I apologize for my misstatements, unwittingly made, and any misimpression that my arguments may have created. I wanted to make the court aware of these matters and I appreciate your consideration.

Sincerely,

Michael Shaunessy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| **TIMOTHY D. PRUITT** | § | |
| **INDIVIDUALLY AND** | § | |
| **ON BEHALF OF ALL OTHER** | § | |
| **PERSONS IN THE UNITED STATES** | § | |
| **SIMILARLY SITUATED,** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. L-03-CV-21** |
| **v.** | § | |
| | § | |
| **KAUFMAN AND BROAD HOME** | § | |
| **CORPORATION, N/K/A, KB HOME,** | § | |
| **KB HOME, INC., KB HOME, KB** | § | |
| **LONE STAR, L.P., AND KB HOME-** | § | |
| **LAREDO, L.P.,** | § | |
| **Defendant.** | § | |

## ADVISORY TO THE COURT REGARDING
## THE POSITION OF AND ACTIONS TAKEN BY THE FTC

COMES NOW, Defendants Kaufman and Broad Home Corporation, n/k/a, KB Home,

KB Home, Inc., KB Home, KB Lone Star, L.P., and KB Home-Laredo, L.P. (collectively "KB

Home") and files this Advisory to the Court regarding the position of and actions taken by the

Federal Trade Commission (the "FTC") with regard to the inclusion of and enforcement of

mandatory binding arbitration is its construction contracts and warranty agreements.

1.      At the March 19, 2003, temporary restraining order hearing, the undersigned

counsel made certain statements to the Court regarding the position of the FTC and actions taken

by the FTC regarding the inclusion of mandatory binding arbitration in KB Home's construction

contracts and warranty agreements.  This week, KB Home's lead counsel had an opportunity to

review a copy of the transcript from the March 19, 2003, hearing and has had conversations with

Defendants' Washington, D.C., counsel after the hearing.  From his review of the transcript and

conferring with Defendants' other counsel, the undersigned believes that it is necessary to file this

Advisory to the Court to both clarify and correct statements he made at the temporary restraining

order hearing.

2.      First, Defendants' lead counsel did not intend to suggest to the Court that the FTC

has acquiesced or even tacitly approved the inclusion or enforcement of mandatory binding

arbitration in Defendants' home construction contracts or warranties.

3.      Second, KB Home's lead counsel was incorrect when he stated that the FTC has

taken "no action" with regard to the inclusion of mandatory binding arbitration in home

construction contracts and related warranties.   On page 15 of the transcript, the undersigned

discussed efforts by consumers and their advocates to inform the FTC of Defendants' inclusion of

mandatory binding arbitration.  Counsel also pointed out that a suit had been filed by another of

2

its homeowners in state district court in Bexar County, Texas in the year 2000 and that suit sought to invalidate the inclusion and/or enforcement of mandatory binding arbitration in Defendants' homeowner agreements.  Specifically, counsel stated:

> That and then a subsequent occurrence.  We were actually sued in 2000 or 2001 in Bear [sic] County in the state district court on the exact same claims.  The FTC contacted us at that time.  We let them know what was going on.  They took no action.

The undersigned's statements that KB Home made FTC aware of the Bexar County litigation are accurate.  However, the statement that the FTC "took no action" is not accurate. Although the FTC has instituted no enforcement action against KB Home or any of its subsidiaries, after conferring with Washington D.C. counsel, the undersigned learned that since 2000, the FTC staff has been in contact with KB Home regarding inclusion of and enforcement of mandatory binding arbitration provisions in home construction contract and home warranties.  In connection with this inquiry, the FTC staff has recently (after the temporary restraining order hearing) asked KB Home for information with regard to its use of mandatory binding arbitration and has held a meeting with KB Home's Washington, D.C., counsel on that subject.  KB Home is cooperating with FTC staff in developing a resolution of the matter that will be acceptable to FTC staff and KB Home.

4.      Defendants file this Advisory to the Court to correct this inaccuracy and to insure there was no misimpression created by the statements of its lead counsel.

Respectfully submitted,

**THE SHAUNESSY LAW FIRM, P.C.**
1000 Norwood Tower
114 West Seventh Street
Austin, Texas  78701
(512) 542-9600 (telephone)
(512) 542-9610 (telecopier)

3

By:

_____
MICHAEL SHAUNESSY
State Bar No. 18134550

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the above and foregoing has been forwarded by facsimile on this 22ⁿᵈ day of April, 2003 to:

Ms. Alice Oliver-Parrott
Ms. Maria Teresa Arguindegui
Mr. David H. Burrow
BURROW & PARROTT, L.L.P.
1301 McKinney, Suite 3500
Houston, Texas  77010-3092

Mr. Robert L. Collins
P.O. Box 7726
Houston, Texas  77270-7726

Mr. John A. Kazen, Of Counsel
KAZEN, MEURER & PEREZ, L.L.P.
1619 Matamoros Street
P. O. Box 6237
Laredo, Texas  78040-6237

by: _____
Michael Shaunessy

4

# THE SHAUNESSY LAW FIRM, P.C.

FEDERAL TRADE COMMISSION

MAY 0 6 2003

ENFORCEMENT DIVISION

**1000 NORWOOD TOWER**
**114 WEST SEVENTH STREET**
**AUSTIN, TEXAS  78701**

MAIN:  (512) 542-9600
FACSIMILE:  (512) 542-9610

MICHAEL SHAUNESSY*
EXTENSION 1161
MIKH@SHAUNESSYLAW.COM
*BOARD CERTIFIED PERSONAL INJURY TRIAL LAW

May 1, 2003

*Via Federal Express*

Honorable Keith Ellison
U.S. District Judge
1300 Matamoros
Laredo, Texas  78040

Re:    Civil Action No. L-03-CV-21; *Timothy D. Pruitt Individually and on Behalf of all*
        *Other Persons in the United States Similarly Situated v. Kaufman and Broad Home*
        *Corporation, N/K/A, KB Home, KB Home, Inc., KB Home, KB Lone Star, L.P., and KB*
        *Home-Laredo, L.P.*; In the United States District Court for the Southern District of
        Texas, Laredo Division

Dear Judge Ellison:

        As I informed the court in my letter of April 22, 2003, and Advisory to the Court of the same date,
KB Home has been in discussions with Federal Trade Commission ("FTC") staff with regard to KB
Home's use of mandatory binding arbitration provisions in its home warranties.

        The FTC staff has requested that KB Home advise the court that in a letter dated June 28, 2001,
KB Home's General Counsel, Bart Pachino, advised the FTC that KB Home would no longer attempt to
enforce mandatory binding arbitration in its home warranties.  This policy was restated by KB Home's
General Counsel in a memorandum dated March 28, 2003.  KB Home's policy not to enforce mandatory
binding arbitration has been complied with in the overwhelming majority of situations involving
homeowner warranty claims, although in a few instances (out of many thousands of claims involving tens
of thousands of homes built by KB Home) the policy was not followed.  It remains the policy of KB
Home <u>not</u> to enforce mandatory binding arbitration provisions in its current home warranties.  Although

Honorable Keith Ellison
May 1, 2003
Page 2

_____

KB Home will continue to seek to use arbitration as a means of resolving warranty disputes with homeowners, it will not take the position that the results of the arbitration are binding on the homeowner.

Sincerely,

*Michael Shaunessy*

Michael Shaunessy

Cc:
*Via Hand Delivery*
Honorable Paul Davis
Judge, 200th Judicial District Court
1000 Guadalupe, Room 327
Austin, Texas 78701

*Via Certified Mail, Return Receipt Requested*
Ms. Alice Oliver-Parrott
Mr. David H. Burrow
BURROW & PARROTT, L.L.P.
1301 McKinney, Suite 3500
Houston, Texas 77010-3092

*Via Certified Mail, Return Receipt Requested*
Ms. Maria Teresa Arguindegui
LAW OFFICE OF MARIA TERESA ARGUINDEGUI
1301 McKinney, Suite 3500
Houston, Texas 77010-3092

*Via Certified Mail, Return Receipt Requested*
Mr. Robert L. Collins
TEXAS LAWYER
P.O. Box 7726
Houston, Texas 77270-7726

Honorable Keith Ellison
May 1, 2003
Page 3
_____

*Via Certified Mail, Return Receipt Requested*
Mr. John A. Kazen, Of Counsel
KAZEN, MEURER & PEREZ, L.L.P.
1619 Matamoros Street
P. O. Box 6237
Laredo, Texas  78040-6237

*Via Certified Mail, Return Receipt Requested*
Mr. Dan Bishop
WATSON BISHOP LONDON & BROPHY
The Littlefield Building
106 East 6th Street, Suite 700
Austin, Texas  78701

*Via First Class Mail*
Mr. Olivero E. Canales
ATTORNEY AT LAW
1102 Scott
Laredo, Texas 78040