**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| COSTAR GROUP, INC., COSTAR REALTY INFORMATION, INC., and LOOPNET, INC., <br><br> Plaintiffs, <br><br> v. <br><br> XCELIGENT, INC., <br><br> Defendant. | Case No. 4:16-cv-01288-FJG |

**REPLY SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS**

# TABLE OF CONTENTS

ARGUMENT...........................................................................................................................1

I.     Xceligent Fails To State a Claim Under the Sherman Act. ......................................1

     A.  Xceligent's Challenge to the 2012 LoopNet Acquisition Is Untimely. .......................... 1

     B.  Xceligent's Refusal To Deal Argument Lacks Merit. ...................................................... 1

     C.  Xceligent's Exclusive Dealing Argument Lacks Merit. .................................................. 4

     D.  Xceligent's Tying and Bundling Arguments Lack Merit. ............................................... 5

II.    The Court Should Dismiss the Defamation Claims.................................................8

     A.  Xceligent Cannot Plead Falsity by Mere Contradiction. ................................................. 8

     B.  Xceligent's Libel and Injurious Falsehood Claims Are Otherwise Deficient................. 9

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483 (8th Cir. 1992) ...................................................... 6

*Annbar Assocs. v. Am. Express Co.*, 565 S.W.2d 701 (Mo. Ct. App. 1978) ................................ 10

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) .............................. 1, 2, 3

*State ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922 (Mo. 2005) .................................... 10

*Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ............................................. 7

*Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264 (6th Cir. 2015) .................................... 7

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000) ....................................... 6

*Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 773 (6th Cir. 2002) .......................................... 7

*Double D Spotting Serv., Inc., v. Supervalu, Inc.*, 136 F.3d 554 (8th Cir. 1998) ............................ 4

*General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987) ............................... 3

*Int'l Travel Arrangers, Inc. v. W. Airlines, Inc.*, 623 F.3d 1255, 1269 (8th Cir. 1980) .................................................................................................................................. 7

*It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016) ........................................ 6, 7

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) ..................................................... 6

*Klein v. Victor*, 903 F. Supp. 1327 (E.D. Mo. 1995) ..................................................................... 9

*LePage's Inc. v. 3M*, 324 F.3d 131 (3d Cir. 2003) ......................................................................... 7

*Liveuniverse, Inc. v. Myspace, Inc.*, No. CV 06-6994 AHM (RZx), 2007 WL 6865852 (C.D. Cal. June 4, 2007) ..................................................................................... 5

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ................................................................ 9

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ..................................................... 10

*Midw. Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265 (8th Cir. 2004) ........................................... 1

*Miller v. Redwood Toxicology Lab.*, No. 11-115, 2011 WL 4340860 (D. Minn. Sept. 15, 2011) ........................................................................................................... 8, 9

*Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288 (11th Cir. 2004) ................................ 5

*Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013) ................................................... 3

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ................................................................ 10

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438 (2009) .......................... 2, 4

*Palin v. N.Y. Times Co.*, No. 17-cv-4853 (JSR), 2017 WL 3712177 (S.D.N.Y. Aug. 29, 2017) ............................................................................................................ 10

*Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6 (D. Me. 2012) ............................ 8

*Raineri Constr., LLC v. Taylor (Raineri I)*, No. 4:12-CV-2297 CEJ, 2014 WL 348632 (E.D. Mo. Jan. 31, 2014) ................................................................................ 10

*Raineri Constr., LLC v. Taylor (Raineri II)*, 63 F. Supp. 3d 1017 (E.D. Mo. 2014) ..................... 10

*Schor v. Abbot Labs.*, 457 F.3d 608 (7th Cir. 2008) ........................................................ 7

*Swafford v. Miller*, 711 S.W.2d 211 (Mo. Ct. App. 1986) ............................................. 10

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ............................................................................................................... 2, 4

*Vitti v. Vockrodt*, No. 16-cv-00236-FJG, 2016 WL 4487884 (W.D. Mo. Aug. 24, 2016) ...................................................................................................................... 8

*Williams v. Capella Univ.*, No. 17-CV-0267, 2017 WL 1155735 (D. Minn. Mar. 7, 2017) ..................................................................................................................... 8

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) ...................................... 7

**STATUTES**

15 U.S.C. § 15b .................................................................................................................. 1

**OTHER AUTHORITIES**

*In re CoreLogic, Inc.*, 2014 WL 1245853 (F.T.C. Mar. 24, 2014) ................................... 3

The premise behind Xceligent's antitrust countersuit is that not only do competitors have the *right* to steal copyrighted content from CoStar's website, LoopNet, but CoStar can be held liable for *treble damages* if it tries to stop them. This result is foreclosed by controlling Supreme Court decisions that are not even mentioned in Xceligent's Opposition. And Xceligent's defamation claims fail because it does not plead malice or falsity. Indeed, it could not plausibly do so because, as CoStar pled, Xceligent's own former employees state, in the same terms, that Xceligent researchers "steal" and "copy[]" CoStar content to resell it.

## I. Xceligent Fails To State a Claim Under the Sherman Act.

### A. Xceligent's Challenge to the 2012 LoopNet Acquisition Is Untimely.

Xceligent begins its Opposition with an assertion that CoStar engaged in illegal monopolization through its "unlawful acquisition of LoopNet" in 2012. Opp'n at 4–5. Xceligent scarcely bothers to explain how the acquisition of LoopNet could be "unlawful" when it received FTC approval. Regardless, if Xceligent has even pled such a claim, it is time-barred.

CoStar entered into the LoopNet Purchase Agreement in March 2012. Countercls. ¶ 88. The deadline to challenge that transaction was four years later, in March 2016. *See* 15 U.S.C. § 15b; *Midw. Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 269–71 (8th Cir. 2004). Rather than challenge the deal, Xceligent signed onto it as a party, and then took no legal action for more than four years. It thereby allowed the applicable statute of limitations to expire. *Id.*

### B. Xceligent's Refusal To Deal Argument Lacks Merit.

Xceligent frames its primary argument around the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), contending that CoStar has unlawfully refused to deal by denying Xceligent access to LoopNet. Opp'n at 5–6. Yet, in so arguing, Xceligent fails even to mention—much less distinguish—two subsequent cases in which the Supreme Court cabined the scope of *Aspen Skiing*, and held that a refusal to assist

competitors generally does not constitute an antitrust violation.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) (*Aspen Skiing* was "at or near the outer boundary of § 2 liability"); *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (*Aspen Skiing* applies only in "limited circumstances").

In *Trinko* the Court held that Verizon's alleged refusal to provide competitors with "operations support systems"—"a set of systems used by [telephone exchanges] to provide services to customers and ensure quality," without which "a rival cannot fill its customers' orders," 540 U.S. at 403—did not constitute an unlawful refusal to deal, *id.* at 409–11.  Even though Verizon had *statutory*, *regulatory*, and *contractual* obligations to provide such services, *id.* at 403, it had no equivalent duty under the antitrust laws:  "We conclude that Verizon's alleged insufficient assistance in the provision of service to rivals *is not a recognized antitrust claim* under this Court's existing refusal-to-deal precedents."  *Id.* at 410 (emphasis added).

Similarly in *Pacific Bell*, AT&T was alleged to have abused a monopoly over residential telephone lines by charging rival internet service providers ("ISPs") excessive prices for wholesale digital subscriber line ("DSL") service.  555 U.S. at 442–43.  Because DSL internet is transmitted over phone lines, rival ISPs could not provide that service without access to the "last mile" phone lines held by AT&T.  *Id.*  Even so, the Court held, AT&T "has no *antitrust duty* to deal with its rivals at wholesale; any such duty arises only from FCC regulations, not from the Sherman Act."  *Id.* at 450 (emphasis added).  "If AT&T had simply stopped providing DSL transport service to the plaintiffs, it would not have run afoul of the Sherman Act."  *Id.* at 451.

The allegations in this case are even further afield.  Unlike the phone companies and ISPs that required physical access to Verizon's and AT&T's infrastructure, Xceligent only needs access to brokers willing to provide listings information about their properties.  And as it specifically pled, if there is a shortage of willing brokers, it is because *those brokers* "lack[] the

2

time and the interest to keep listings up to date and accurate." Countercls. ¶ 131; *id.* ¶ 36 (same). CoStar has no antitrust duty to supply (or permit Xceligent to steal) information that brokers are unwilling to supply Xceligent on their own.[1]

Xceligent tries to analogize this case to *Aspen Skiing* by contending that *before* its "acquisition by CoStar, LoopNet had provided Xceligent with access to broker listing data." Opp'n at 5. This asserted fact is both unpled and immaterial. Xceligent alleges that during the period in question, LoopNet was Xceligent's *parent company*, owning 100% of its preferred stock. *See* Countercls. ¶ 77. The alleged denial of access occurred only after CoStar bought LoopNet, and Xceligent was spun off to operate as a "direct competitor to CoStar." *Id.* ¶ 80. It is natural that a parent company would give its subsidiary competitive advantages that a "direct competitor" may not. And it is likewise natural that a company that spends over $800 million purchasing an asset might choose to operate it differently than its predecessor. Nothing in *Aspen Skiing* requires CoStar to act against its own interests by adhering to *another company's* policy favoring its then-subsidiary, now CoStar's "direct competitor."[2]

For the same reasons, *General Industries Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987), is inapposite. In that case, the court relied upon *Aspen Skiing* to find that a pet food manufacturer's abrupt withholding of credit to a distributor after it began selling a

---

[1] If the FTC believed it necessary for Xceligent to have continuing access to LoopNet, it could have mandated that result, just as it has done in other contexts. *Compare* Countercls., Ex. A (CoStar FTC Order), *with In re CoreLogic, Inc.*, 2014 WL 1245853, § II (F.T.C. Mar. 24, 2014) (requiring acquirer Corelogic to continue licensing certain data to competitor RealtyTrac). Instead, the remedy adopted by the FTC was to authorize Xceligent to demand that CoStar notify brokers of Xceligent's competing database, and to provide them with Xceligent's contact information. *See* CoStar FTC Order § II.B.2. At the same time, it provided for monitoring to ensure "Xceligent has not obtained any CRE Listings or CRE Information *derived improperly from any CoStar Database*." *Id.* § II.B.1 (emphasis added). The FTC's obvious intention was that Xceligent would obtain listings information directly from brokers, not take it from LoopNet.

[2] *See, e.g., Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074–79 (10th Cir. 2013) (Gorsuch, J.).

3

competitor's products could be considered unlawful under the Sherman Act. *Id.* at 803–04. It is doubtful the case remains good law following *Trinko/Pacific Bell*.[3] But even if it does, the key element of a party abandoning its own profitable business practice is absent here.

Finally, Xceligent's argument that CoStar is "sacrific[ing] upstream profits" by denying Xceligent a license to use LoopNet "on the same terms . . . available to the general public," Opp'n at 6, is risible. Xceligent is not seeking access "on the same terms" as the public; it is seeking to enjoin those terms because they prohibit the sort of wholesale copying and reselling in which Xceligent wishes to engage. *See* Countercls., Prayer for Relief, § D. No licensing fee could compensate CoStar for the damage it would suffer if Xceligent got its way.

### C. Xceligent's Exclusive Dealing Argument Lacks Merit.

Xceligent argues that "CoStar forces customers to enter into explicitly exclusive agreements for CRE Listings," Opp'n at 7, but fails to identify any such agreement. Xceligent instead argues that a single instance of an unnamed CoStar customer allegedly believing that it cannot "share listings information" with Xceligent amounts to proof of an explicit exclusive dealing agreement. *Id.* (citing Countercls. ¶ 177). Xceligent fails to identify the customer, much less any agreement on which its (erroneous) belief is based. That does not suffice to plead an exclusive dealing claim. *See, e.g.*, *Double D Spotting Serv., Inc., v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir. 1998) (an "'antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal'" (citation omitted)).

Xceligent contends "CoStar forces brokers to enter into *de facto* exclusive agreements," Opp'n at 7, but fails to identify any aspect of CoStar's broker agreements that are functionally

---

[3] *Compare Gen. Indus. Corp.*, 810 F.2d at 804 (rejecting defendant's argument that the absence of a duty to provide credit meant a suspension of credit was not actionable under the Sherman Act), *with Pac. Bell Tel. Co.*, 555 U.S. at 451 ("If AT&T had simply stopped providing DSL transport service to the plaintiffs, it would not have run afoul of the Sherman Act.").

4

exclusive. Xceligent asserts that "by modifying broker records" on LoopNet, CoStar prevents brokers from sharing their listings with Xceligent. *Id.* at 7–8. But it does not (and cannot) allege that the CoStar agreements prevent brokers from supplying their own copies of CRE information to Xceligent—something those brokers plainly have the ability to do if "[n]early all listings content available on LoopNet . . . is originally generated by brokers." *Id.* at 2.

Instead of identifying contractual terms that create exclusivity, Xceligent points to brokers' alleged *unilateral* choice to use LoopNet to store "the original and often only copies of their listings." *Id.* at 7. The crux of this argument is that because some (unidentified) brokers allegedly discard all copies of their CRE information in order to use LoopNet as a "record system[]," CoStar should be required to share content published on LoopNet with competitors. *Id.*; *see* Countercls. ¶¶ 195, 219. Fatally, however, Xceligent cannot attribute that practice to the terms of any agreement between CoStar and brokers. It acknowledges that the LoopNet terms of service prohibit any such sharing, Opp'n at 9, and thus *discourage* reliance upon LoopNet as a "record system." That cannot be a basis upon which to find an *agreement* to deal exclusively.

Incredibly, Xceligent asserts that CoStar's refusal to permit competitors to copy CRE information from its proprietary databases has "no procompetitive benefits." *Id.* at 8. But the prevention of theft has obvious competitive benefits insofar as it is a prerequisite to investment. *See Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295–98 (11th Cir. 2004); *LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994 AHM (RZx), 2007 WL 6865852, at *11–14 (C.D. Cal. June 4, 2007), *aff'd*, 304 F. App'x 554 (9th Cir. 2008).

### D. Xceligent's Tying and Bundling Arguments Lack Merit.

The parties agree—at least initially—that tying occurs when a party conditions the sale of one product or service on a *requirement* to purchase other products or services. *See* Mot. at 15 n.11; Opp'n at 11 (same). But after setting forth the correct standard, Xceligent immediately

5

abandons it by arguing that CoStar committed tying through the use of discounts that "ma[k]e it economically unreasonable to buy LoopNet and CoStar products separately . . . ." Opp'n at 11. That is not a description of *tying*; it is a description of *discounting*, i.e., competition.

As one of Xceligent's own cases explains, if "the buyer is free to take either product by itself *there is no tying problem* even though the seller may also offer *the [same] items as a unit at a single price.*" *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1498 (8th Cir. 1992) (emphases added) (Opp'n at 12); *see also It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684 (4th Cir. 2016) (same). Here, Xceligent concedes CoStar's willingness to sell individual products and services on their own. Opp'n at 10. That alone shows the absence of a valid claim for tying.[4]

Xceligent also argues that the same conduct can be considered an illegal bundled discount, *id.* at 13–15, yet it once again ignores the controlling Supreme Court and Eighth Circuit decisions cited by CoStar showing that discounting is encouraged by the antitrust laws. Mot. at 13–15 (citing cases). Presumably because it cannot distinguish those cases, Xceligent asks the Court to define a new legal standard for bundled discounts that the Eighth Circuit and Supreme Court have never recognized. Opp'n at 13–14. The Court should decline this invitation, both because it is unnecessary given the paltry facts alleged, and because the cases cited by Xceligent are economically incompatible with the nature of this case.

The circuit split that Xceligent invites the Court to wade into concerns the role of average variable cost in determining whether the price of a bundled product has been set at

---

[4] An additional reason exists for rejecting Xceligent's argument that "CoStar is unlawfully tying CRE information services across geographic markets." Opp'n at 13. By definition, tying requires the sale of products in two different *product markets*. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1062 (8th Cir. 2000) (tying "'cannot exist unless two separate product markets have been linked'" (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984)) (Opp'n at 11). Xceligent alleges that CRE information services are sold in one product market, Countercls. ¶ 21, making a tying claim impossible.

6

predatory levels—and it is undeniably a mess.[5] But those cases concern products and services that *have a variable cost* of production, and as Xceligent elsewhere concedes, that is not true in the context of a subscription database which incurs "*de minimis*" expense from granting access to a subscriber. Opp'n at 10. Because "*CoStar is not making any customer-specific investments*," *id.* (emphasis added), its variable costs do not change by bundling additional rights to a subscriber. If Xceligent's illegal discount theory is even cognizable—*but see* Mot. at 13 (citing Eighth Circuit decisions urging "great caution and a skeptical eye" in low pricing cases)—it would require the creation of a new legal standard that Xceligent fails even to propose.

No such heavy lifting is required. Xceligent failed to plead any facts from which a jury could conclude that CoStar is pricing its services at predatory levels, and any viable test for analyzing such a claim. Tellingly, it says it is able to "provide a more definite statement" of the basis for this claim, Opp'n at 15 n.6, but does not yet offer one. A claim as ill-defined—legally and factually—as this one does not deserve to survive a motion to dismiss.[6]

---

[5] *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (Opp'n at 13), held that bundled discounts could be anticompetitive regardless of whether they resulted in a product sold below cost (contrary to numerous Supreme Court decisions, including *Pacific Bell*). The Sixth and Ninth Circuits rejected that holding, and adopted an allocated discount test to assess whether pricing was below cost. *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 906 (9th Cir. 2008) (Opp'n at 14); *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 273 (6th Cir. 2015). The Third Circuit later determined that *LePage's* should be read narrowly, as it had been "undermined by intervening Supreme Court precedent." *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 274 n.11 (3d Cir. 2012) (Opp'n at 13). At least two other circuits have rejected the concept of illegal bundling as a viable antitrust theory. *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684 (4th Cir. 2016); *Schor v. Abbott Labs.*, 457 F.3d 608, 612–13 (7th Cir. 2008).

[6] The cases cited by Xceligent in support of its defamation-as-antitrust argument, Opp'n at 15–16, involved conduct well beyond ordinary defamation. The defendants in *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, threatened to retaliate against travel agents who dealt with a rival. 623 F.2d 1255, 1269 (8th Cir. 1980). In *Conwood Co. v. U.S. Tobacco Co.*, the defendant effectively removed rivals' products and advertising from retailers' shelves. 290 F.3d 768, 773 (6th Cir. 2002). Such cases do not contradict the broadly-accepted rule that ordinary defamation claims do not give rise to "antitrust injury." *See* Mot. at 16.

7

## II. The Court Should Dismiss the Defamation Claims.

### A. Xceligent Cannot Plead Falsity by Mere Contradiction.

Xceligent's defamation-based claims fail because Xceligent does not and cannot allege any facts to make it plausible that Xceligent and its agents did not steal CoStar's content. Relying on *Vitti v. Vockrodt*, No. 16-cv-00236-FJG, 2016 WL 4487884 (W.D. Mo. Aug. 24, 2016), Xceligent counters that it need only "quote[]" CoStar's statements about the theft and "plead[] that each was false." Opp'n at 17 (quoting *Vitti*, 2016 WL 4487884, at *6). But in *Vitti*, which involved a statement that the plaintiff's business was "troubled," the Court found that the plaintiff stated a claim *precisely because* he did more than quote the statement and assert it was false—he alleged facts showing "that '[the business] had a profit each month that Plaintiff was at [the business].'" 2016 WL 4487884, at *4, *6; *see also Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 16 (D. Me. 2012) ("Plaintiffs are in a position to know whether and how the statements are false," and "must, especially under the *Iqbal/Twombly* standard, provide factual underpinning of how the statements are false").

Unable to point to any facts supporting falsity, Xceligent draws illogical distinctions between this case and others in which courts dismissed complaints for failing to plead such facts. For example, Xceligent contends that *Williams v. Capella University*, No. 17-CV-0267 (DSD/FLN), 2017 WL 1155735, (D. Minn. Mar. 7, 2017), is inapposite because the plaintiff's claim "depend[ed] on proving positive facts." Opp'n at 18. Facts are neither "positive" nor negative, and whether a defendant disparages a plaintiff for an act or an omission, the pleading requirement is the same: a plaintiff must "*plausibly* allege" why the statement is untrue. *Williams*, 2017 WL 1155735, at *4. Similarly, Xceligent asserts that the insufficiency of a falsity allegation in *Miller v. Redwood Toxicology Laboratory, Inc.*, No. 11-115 (DWF/LIB), 2011 WL 4340860, at *7 (D. Minn. Sept. 15, 2011), *aff'd*, 688 F.3d 928 (8th Cir. 2012),

8

depended on materials "outside the pleadings" that corroborated the statement's truth. Opp'n at 18. The *Miller* court, however, did not base its dismissal on materials outside the complaint, but rather on the fact that multiple falsity allegations were "conclusory." *Miller*, 2011 WL 4340860, at *7.[7] And though the court mentioned that one allegation seemed particularly implausible because it was contradicted by a declaration, *id.*, an even greater implausibility exists here: the pleadings are *full* of evidence that supports the accuracy of CoStar's statements. *See, e.g.*, Am. Compl. ¶¶ 13–28, 70–160; Answer ¶ 104. Indeed, Xceligent cannot plead a plausible reality in which CoStar's statements are false because, as pled by CoStar, *Xceligent's own former employees* describe its misconduct *in the same terms*. *See* Am. Compl. ¶¶ 14 (former Xceligent researcher stating that researchers "steal [CoStar's] information"), 15 ("dishonest and wrong that . . . Xceligent charged customers for the data after simply copying it from LoopNet"), 15 ("Xceligent has "serious ethical issues"), 101 (Xceligent researchers use "photos we copied from LoopNet"), 132 (Xceligent is "unethical"); *see also id.* ¶¶ 13, 77–78, 82–83, 94, 133, 211.[8]

### B. Xceligent's Libel and Injurious Falsehood Claims Are Otherwise Deficient.

Xceligent also does not allege facts supporting *any* degree of fault. Yet Xceligent claims that a plaintiff sufficiently alleges fault simply by reciting the applicable legal standard, *see* Opp'n at 19, which Xceligent pleaded as actual malice, *see* Countercls. ¶¶ 233, 317, 324.[9]

Not so. Courts consistently forbid "conducting discovery" on such threadbare allegations as "completely out of line with the current state of the law," observing that "*Iqbal* itself directly

---

[7] Xceligent relies on *Klein v. Victor*, 903 F. Supp. 1327 (E.D. Mo. 1995), but this case predates *Iqbal/Twombly* and lacks any analysis of the applicable legal standard.

[8] For the same reason Xceligent does not (cannot) explain why it is defamatory to say that Xceligent "populated the Xceligent databases" with "copied" CoStar content. Countercls. ¶ 309.

[9] A "motive arising from spite or ill will," like a desire to scare customers, *see* Opp'n at 19, does not suffice to *allege* actual malice. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991).

9

held that malice and other degrees of intent are subject to the plausibility pleading standard." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *see also* Mot. at 18–19. Further, Xceligent's inability to identify a *single individual* who possessed the requisite intent, and its attribution to CoStar of "collective" actual malice, is utterly "unrecognized by the law in this area." *Palin v. N.Y. Times Co.*, No. 17-cv-4853 (JSR), --- F. Supp. 3d ---, 2017 WL 3712177, at *1, *7 (S.D.N.Y. Aug. 29, 2017) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)).

Nor can Xceligent explain how legal fees could constitute a "pecuniary loss" supporting injurious falsehood, except where such fees were necessitated by malicious prosecution, false criminal accusations, or slander of title. Instead, Xceligent cites a case from just such a context, as if to prove CoStar's point. *See* Opp'n at 20 (citing *State ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922 (Mo. 2005) (awarding fees incurred in an investigation initiated by false statements to police)).[10] Xceligent also contends that it need not plead a specific pecuniary loss under an exception articulated in *Annbar Associates v. American Express Co.*, 565 S.W.2d 701, 708 (Mo. Ct. App. 1978), Opp'n at 20, but omits the requirement that it have "alleged facts" showing, *inter alia*, "the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication," *Swafford v. Miller*, 711 S.W.2d 211, 216–17 (Mo. Ct. App. 1986) (internal quotation marks omitted). Xceligent did none of those things.

## CONCLUSION

For the foregoing reasons, Xceligent's counterclaims should be dismissed with prejudice.

---

[10] Xceligent also cites *Raineri Construction, LLC v. Taylor (Raineri II)*, 63 F. Supp. 3d 1017, 1033 (E.D. Mo. 2014), Opp'n at 20, but the losses in *Raineri* were losses that Xceligent does not allege, such as "interfering with [] current customer relationships, interfering with business operations, and causing property damage," *Raineri Constr., LLC v. Taylor (Raineri I)*, No. 4:12-CV-2297 CEJ, 2014 WL 348632, at *2 (E.D. Mo. Jan. 31, 2014).

10

Dated: October 5, 2017                            Respectfully submitted,


By: /s/ Nicholas J. Boyle

Robert T. Adams - MO Bar # 34612
Ann M. Songer - MO Bar # 17315
Eric M. Anielak - MO Bar # 45653
Elizabeth Fessler - MO Bar # 67169
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
rtadams@shb.com
asonger@shb.com
eanielak@shb.com
efessler@shb.com

Nicholas J. Boyle (*pro hac vice*)
Carl R. Metz (*pro hac vice*)
C. Bryan Wilson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Fax: (202) 434-5029
nboyle@wc.com
cmetz@wc.com
bwilson@wc.com

*Attorneys for Plaintiffs CoStar Group, Inc. and CoStar Realty Information, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court and served by e-mail, on this 5th day of October 2017, to the following counsel:

Robert A. Henderson
John Tyner
Amy D. Fitts
Polsinelli PC
900 W. 48th Street
Suite 900
Kansas City, MO 64112
Telephone: (816) 374-0530

*Attorneys for Defendant Xceligent, Inc.*

                                                  /s/ Elizabeth A. Fessler
                                                  Elizabeth A. Fessler